IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

---------------------------------------------------------------x
In re                                             :    Chapter 11
                                                  :
CRESCENT RESOURCES, LLC, et. al.,                 :    Case No. 09-11507 (CAG)
                                                  :
           Debtors.                               :    Joint Administration
                                                  :    Requested
                                                  :
---------------------------------------------------------------x

**APPLICATION PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO EMPLOY AND RETAIN ROBINSON, BRADSHAW & HINSON, P.A., AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

A HEARING WILL BE CONDUCTED ON [____], 2009 at [___] AT THE HOMER J. THORNBERRY FEDERAL JUDICIAL BUILDING, 903 SAN JACINTO BOULEVARD, AUSTIN, TEXAS.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Crescent Resources, LLC ("Crescent Resources"), its parent Crescent Holdings, LLC ("Crescent Holdings") and their affiliated debtors as debtors and debtors in possession (collectively, "Crescent" or the "Debtors"),[1] respectfully represent:

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as Exhibit A.

## Background

1.  On the date hereof (the "Commencement Date"), each of the Debtors filed a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A motion seeking joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") is currently pending before this Court.

## Jurisdiction and Venue

2.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Crescent's Business

3.  Crescent, which is headquartered in Charlotte, North Carolina, is a leading real estate development company that focuses on master-planned communities and commercial, industrial, and residential real estate primarily in the southeast, but also in other regions of the United States. In particular, Crescent has properties located in Arizona, Florida, Georgia, North Carolina, South Carolina, Tennessee, Texas, and Virginia. Although Crescent Resources and its predecessors-in-interest have been in existence since 1969, Crescent Holdings was created in 2006. Crescent Holdings' equity interests are held 50% by Duke Energy Corporation ("Duke Energy") and 50% by certain private equity limited partnerships known as Morgan Stanley Real Estate Fund V U.S. and/or its affiliates ("Morgan Stanley"). Throughout its history, Crescent and its predecessors have developed and sold over 20 million square feet of commercial and industrial

projects, between 50 and 60 residential communities with a variety of features and amenities, and numerous other master-planned communities.

4. Currently, Crescent Resources has four real estate divisions: residential, commercial, multifamily, and land management. The residential division (the "Residential Division") is Crescent Resources' largest division, comprising 54% of the Debtors' total assets. The Residential Division includes 41 master-planned communities and 4 condominium projects totaling 53,404 acres of developed land. The commercial property division (the "Commercial Division") accounts for 19% of Crescent Resources' total assets. The Commercial Division has 9 active projects, including office, industrial, and retail projects currently under development, as well as 1,822 acres of commercially-zoned undeveloped land. The multifamily division (the "Multifamily Division") accounts for 6% of Crescent Resources' total assets. The Multifamily Division includes 4 projects in various stages of development totaling 1,308 units and an additional 195 acres of entitled, but undeveloped land.

5. In the 1960s, Duke Energy acquired approximately 300,000 acres of land in rural areas of North and South Carolina (the "Legacy Land"). Beginning in 1969, Duke Energy contributed the Legacy Land to Crescent Resources' predecessor-in-interest. Since 2006, the Legacy Land has been managed by Crescent Resources (the "Land Management Division"). As the value of the Legacy Land has increased over time, the Legacy Land has been sold in accordance with a long-term, structured disposition plan, whereby the proceeds from the sales of Legacy Land are invested in commercial property projects in urban areas (the "Legacy Land Sales Plan"). The combined proceeds from the Legacy Land Sales Plan and the Debtors' other real estate ventures have enabled Crescent to fund and operate its various real estate divisions. The Land Management Division, which manages the Legacy Land, accounts for 21% of Crescent Resources' total assets.

6. Crescent and its non-debtor affiliates are comprised of various joint ventures and wholly-owned subsidiaries that serve as holding companies, management companies, and project-level operating companies. Crescent Resources operates its business on an integrated basis with centralized administration, leasing, and management functions that enable it to achieve operating efficiencies and revenue enhancements that benefit the overall enterprise. In 2007, Crescent Resources acquired 100% control of LandMar Group, LLC ("LandMar Group") and its subsidiaries. The LandMar Group represents a significant part of the Residential Division described above and maintains assets throughout Florida.

**Prepetition Debt**

7. As of the Commencement Date, certain of the Debtors were parties to the First Amended and Restated Credit Agreement, dated as of June 17, 2008 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"), by and among Crescent Resources, as borrower, Crescent Holdings, the other guarantors identified therein, the lenders party thereto (the "Lenders"), and Bank of America, N.A. ("BOA"), as administrative agent and collateral agent.

8. The Prepetition Credit Agreement provides for (i) a term loan facility (the "Term Loan Facility") in the principal amount of $1,225,000,000, (ii) a revolving credit facility (the "Revolving Credit Facility") in the principal amount of $300,000,000, which reduces to the principal amount of $275,000,000 after December 30, 2009, (iii) a swing line facility in the principal amount of $50,000,000 (which reduces borrowings available under the revolving credit facility), and (iv) a letter of credit facility (the "Letter of Credit Facility") in the principal amount of $150,000,000 (which reduces borrowings available under the revolving credit commitment). Obligations arising under the Prepetition Credit Agreement are direct obligations of Crescent

Resources. These direct obligations are guaranteed (the "Guaranty") by (i) Crescent Holdings and (ii) most of the additional Debtors, pursuant to the terms of (A) the Prepetition Credit Agreement, (B) that certain Amended and Restated Joinder Agreement, dated as of June 17, 2008, by and between the entities party thereto and BOA, and (C) that certain Joinder Agreement, dated as of July 25, 2008, by and between the entities party thereto and BOA (the Joinder Agreements in (B) through (C), collectively, the "Joinder Agreements").

9. Certain of the Debtors (the "Pledgors") also entered into a pledge agreement, dated as of September 7, 2006 (the "Pledge Agreement"), by and between the Pledgors and BOA pursuant to which they pledged 100% of the capital stock of substantially all their domestic subsidiaries with certain exceptions.[2] In addition, certain of the Debtors granted mortgages or deeds of trust on their real properties, except for (x) real property constituting qualified Legacy Land to the extent that the value of such real property is less than or equal to $500,000, or (y) any real property that, as of the closing date, was encumbered with non-recourse, project-level debt or security interests that prohibited the execution, delivery and recording of such mortgage instruments. Crescent Resources also entered into that certain Account, Security, Pledge, Assignment, and Control Agreement, dated as of August 24, 2007, pursuant to which Crescent Resources granted to BOA control over and a security interest in all deposit accounts opened by Crescent Resources with BOA.

10. The aggregate principal amount of indebtedness owing under the Prepetition Credit Agreement as of the Commencement Date is approximately $1,487,890,752.

---

[2] The Pledgors, include: Crescent Resources; Crescent Holdings; CLT Development, LLC; Crescent Potomac Yard, LLC; Crescent Twin Creeks, LLC; Crescent/Arizona, LLC; Palmetto Bluff Development, LLC; Palmetto Bluff Investments, LLC; Twin Creeks Management, LLC; Twin Creeks Property, Ltd.; LandMar Group, LLC; Hawk's Haven Joint Development, LLC; and Hawk's Haven Sponsor, LLC.

### Property-Level Debt

11. Approximately 10 of the Debtors also have secured property-level debt in the form of construction loans, mortgage loans, and seller-financed loans. As of the Commencement Date, there is $89,110,601 in outstanding property-level debt.

### Financials

12. As of the Commencement Date, Crescent Resources, as a whole, reported approximately $2.2 billion[3] in total assets and approximately $1.9 billion in total liabilities, including $297,244,484 outstanding under the Revolving Credit Facility (including outstanding letters of credit) and $1,197,000,000 outstanding under the Term Loan Facility. For 2008, Crescent Resources reported consolidated revenue of approximately $373 million. Crescent Resources employs 247 people. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the declaration of Kevin H. Lambert, Chief Financial Officer of Crescent Resources filed concurrently herewith (collectively, the "Declaration").

### Summary

13. Although the Debtors have sought to engage Weil, Gotshal & Manges LLP ("WG&M") as their primary bankruptcy counsel under 11 U.S.C. § 327(a), they also require Robinson, Bradshaw & Hinson, P.A.'s ("RB&H") assistance with several important matters. RB&H has a long-standing relationship with the Debtors and has a great deal of knowledge about their business and financial affairs.

---

[3] Based on the Debtors unaudited financial statements as of December 31, 2008.

14. The Debtors seek authority to hire RB&H under 11 U.S.C. § 327(e) as their special counsel for general corporate and organizational matters; real property development, management, leasing, financing and purchase and sale matters; pending and future litigation and arbitration matters; land use regulation matters; and employment and employee benefits matters.

15. In addition, and because of RB&H's institutional knowledge of the Debtors, the Debtors also seek approval to employ RB&H to assist with, *inter alia*, certain asset sales, post-petition financing transactions, corporate matters, the collection and analysis of information needed in these chapter 11 cases, and litigation matters.

### RB&H's Prepetition Relationship With the Debtors

16. RB&H has been representing Crescent and many of its debtor and non-debtor subsidiaries since 1986 and has served as Crescent's primary corporate counsel for several years. Thus, RB&H has a great deal of knowledge regarding many aspects of the Debtors' business and affairs. Some examples are provided below.

17. RB&H has represented the Debtors in the acquisition, development and disposition of real property, including residential, office, retail, resort and mixed-use developments.

18. RB&H has represented the Debtors in pre-petition project level debt transactions and in the establishment and amendment of the Debtors' comprehensive credit facility, involving mortgages and other security instruments on Debtors properties in eight states.

19. RB&H represented Crescent in connection with the formation, in 2006, of its current parent holding company, incident to a change in Crescent's historical ownership structure as a wholly-owned, indirect subsidiary of Duke Energy Corporation.

20. RB&H represents and has represented the Debtors' in much of their litigation and currently monitors all of the Debtors' litigation.

21. RB&H represents and has represented Crescent in employment matters and in providing advice and assistance in employee benefits matters.

22. Through this relationship, RB&H has developed an in-depth knowledge of the Debtors' business and affairs that will be necessary to allow these cases to proceed smoothly and efficiently.

### Relief Requested

23. By this Application, the Debtors request, pursuant to sections 327(e) of the Bankruptcy Code, entry of the proposed order (the "Proposed Order"), substantially in the form attached hereto as Exhibit C, authorizing the Debtors to employ and retain RB&H, *nunc pro tunc* to the Commencement Date. For the reasons detailed above, the Debtors believe that they need RB&H's assistance and representation in these cases. It is contemplated that RB&H will continue to provide representation and advice to the Debtors in the same types of matters as the firm did pre-bankruptcy, including representing them in matters that are not directly related to the reorganization, but which are necessary for the Debtors to operate in chapter 11.

24. Section 327(e) of the Bankruptcy Code authorizes the Debtors to

> employ, for a specified special purpose, other than to represent the [debtor] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

25. In support of the Application, the Debtors submit the declaration of Robert C. Sink (the "Sink Declaration"), a copy of which is attached hereto as Exhibit B. The Debtors believe, based on the Sink Declaration that RB&H does not hold any adverse interest to these Debtors or to their estates with respect to the matters on which RB&H is to be employed.

26. Moreover, although disinterestedness is not required of professionals employed under section 327(e), the Debtors believe, based on the Sink Declaration, that RB&H does not hold any adverse interest to these Debtors or to their estates and that it is a "disinterested person" within the meaning of the Bankruptcy Code.

27. The Debtors request that the Court approve the retention of RB&H, under a general retainer, to perform the extensive legal services that will be necessary during these chapter 11 cases in accordance with RB&H's normal hourly rates in effect when services are rendered and RB&H's normal reimbursement policies.

### The Retention of RB&H is Warranted

28. The Debtors have selected RB&H as their attorneys because of RB&H's knowledge of the Debtors' business and affairs and its general expertise and experience in matters relevant to the Debtors' operations.

29. RB&H is a general practice firm with 124 attorneys. The firm was organized in 1960. Its principal office is located in Charlotte, North Carolina, which is also the location of Crescent's corporate headquarters.

30. The Debtors also have submitted an application contemporaneously herewith to employ WG&M as their primary bankruptcy counsel, Hohmann, Taube & Summers, LLP as co-bankruptcy counsel, Alvarez & Marsal North America, LLC, as restructuring advisors, Lazard Freres & Co. LLC, as restructuring and financial advisors and The Garden City Group, Inc., as claims and noticing agent, as well as a motion for employment of certain professionals in the ordinary course. The Debtors expect, and RB&H and WG&M agree, that the firms will not duplicate efforts on these matters. It is anticipated that the efficient coordination of efforts of the

Debtors' attorneys and other professionals will greatly add to the progress and effective administration of these chapter 11 cases.

### Scope of Services

31. The professional services that RB&H will render to the Debtors under section 327(e) will include the following:

    a. assisting the Debtors in their efforts to gather information and provide historical perspective needed in these chapter 11 cases;

    b. representing and advising the Debtors in connection with general corporate matters;

    c. representing and advising the Debtors in connection with their acquisition, development, management, leasing and disposition of real property, including residential and commercial projects;

    d. representing and advising the Debtors in connection with on-going and future claims and litigation matters;

    e. representing and advising the Debtors in employment and employee benefit matters; and

    f. representing and advising the Debtors with respect to other non-bankruptcy matters.

### RB&H's Disinterestedness

32. To the best of the Debtors' knowledge, the members, counsel, and associates of RB&H do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Sink Declaration.

33. Based on the Sink Declaration, the Debtors submit that RB&H is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. The Debtors have been informed that RB&H will conduct an ongoing review of its files to ensure that

no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, RB&H will supplement its disclosure to the Court.

### Professional Compensation

34.  RB&H has been compensated for professional services performed for the Debtors and for reasonable and necessary expenses incurred in connection therewith, on a regular monthly basis and for the period immediately preceding the Commencement Date.

35.  The Debtors understand that RB&H intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules"), the guidelines (the "Guidelines") established by the United States Trustee for the Western District of Texas (the "U.S. Trustee"), and further orders of this Court ("Orders") for all services performed and expenses incurred after the Commencement Date.

36.  For services rendered by RB&H in these cases, the Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the Orders, propose to pay RB&H its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Sink Declaration and to reimburse RB&H according to its customary reimbursement policies. The Debtors respectfully submit that RB&H's rates and policies are reasonable and consistent with rates charged by comparable firms for the services being provided. RB&H has agreed to notify the Debtors and the U.S. Trustee of any change in the hourly rates charged by RB&H for services rendered.

## Notice

37. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the United States Trustee for the Western District of Texas; (ii) the Debtors' thirty (30) largest creditors (on a consolidated basis); (iii) counsel to BOA, as agent to the Debtors' Lenders; and (iv) counsel to the Debtors' proposed postpetition lenders (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 10, 2009

CRESCENT RESOURCES, LLC

By: Kevin H. Lambert
Title: Chief Financial Officer