## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **CRESCENT RESOURCES, LLC, et. al.,** | : | **Case No. 09-11507 (CAG)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |

-------------------------------------------------------------x

## DISCLOSURE STATEMENT FOR
## JOINT PLAN OF REORGANIZATION OF
## <u>DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

The Bankruptcy Court has not approved this proposed disclosure statement as containing adequate information pursuant to section 1125(b) of the Bankruptcy Code for use in the solicitation of acceptances or rejections of the chapter 11 plan described herein and attached hereto. Accordingly, the filing and dissemination of this disclosure statement are not intended to be, and should not in any way be construed as, a solicitation of votes on the plan, nor should the information contained in this disclosure statement be relied on for any purpose until a determination by the Bankruptcy Court that the proposed disclosure statement contains adequate information.

The Debtors reserve the right to amend or supplement this proposed disclosure statement at or before the hearing to consider this disclosure statement.

HOHMANN, TAUBE & SUMMERS, L.L.P.
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Eric J. Taube (19679350)
Mark C. Taylor (19713225)
(512) 472-5997

- and -

WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Martin A. Sosland (18855645)
Lydia T. Protopapas (00797267)
(214) 746-7700

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

Dated: January 29, 2010
        Austin, Texas

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     EXECUTIVE SUMMARY ................................................................................... 4

        A.      Summary of Classification and Treatment of Claims and Equity Interests
                Under the Plan .......................................................................................... 4

        B.      Summary of Voting Procedures ............................................................... 17

        C.      Overview of the Chapter 11 Process ........................................................ 18

III.    OVERVIEW OF THE DEBTORS' OPERATIONS AND THE CHAPTER 11
        CASES ............................................................................................................... 18

        A.      Formation of the Debtors' Operations ..................................................... 18

        B.      Description of the Debtors' Operations ................................................... 19

                1.      The Residential Division .............................................................. 22

                2.      The Commercial Division ............................................................ 24

                3.      The Multifamily Division ............................................................ 26

                4.      Land Management ........................................................................ 27

                5.      Crescent Resources' Employee and Management Overhead ......... 28

        C.      Significant Indebtedness .......................................................................... 29

                1.      The Prepetition Credit Agreement ............................................... 29

                2.      The Asset-Level Debt ................................................................... 30

                3.      The Post-Petition Credit Agreement ............................................ 35

        D.      Significant Events Leading to the Commencement of the Chapter 11 Cases ...... 35

                1.      Financial Environment and Liquidity Issues ............................... 36

                2.      Restructuring Efforts ................................................................... 36

        E.      The Chapter 11 Cases .............................................................................. 37

                1.      Commencement of the Chapter 11 Cases and the "First-Day"
                        Orders .......................................................................................... 37

                2.      Other Significant Orders .............................................................. 38

                3.      Appointment of the Creditors' Committee ................................... 38

                4.      Significant Asset Sales ................................................................ 39

                5.      Abandonment ............................................................................... 39

                6.      Debtor-in-Possession Financing and Cash Collateral Order ......... 40

                7.      The Debtors' Exclusive Periods .................................................. 40

8. The Claims Reconciliation Process ........................................................... 41

9. Settlements ................................................................................................ 42

F. Pending Litigation Against the Debtors.................................................................. 42

1. Lake Mary, Florida .................................................................................... 42

2. Builders' Claims - The Parks at Meadowview ......................................... 43

3. Polk-Sullivan / Chatham Partners – The Parks at Meadowview ............. 44

IV. THE PLAN ........................................................................................................................ 44

A. Summary and Treatment of Unclassified Claims .................................................. 44

1. Administrative Expense Claims................................................................. 44

2. Professional Compensation and Reimbursement Claims ......................... 45

3. DIP Claims................................................................................................. 46

4. Priority Tax Claims.................................................................................... 46

B. Classification and Treatment of Claims................................................................. 46

1. Classes 1 through 121 – Other Priority Claims ........................................ 46

2. Classes 122 through 242 – Secured Tax Claims....................................... 47

3. Classes 243 through 354 – Prepetition Lender Claims............................. 47

4. Classes 355 through 475 – Other Secured Claims.................................... 48

5. Class 476 – 223 Developers Secured Claims ........................................... 48

6. Class 477 – Grand Woods Secured Claims .............................................. 49

7. Class 478 – Portland Place Secured Claims ............................................. 49

8. Class 479 – Rim Secured Claims.............................................................. 50

9. Class 480 – Grand Reserve Secured Claims............................................. 50

10. Class 481 – Grand Landings Note 1 Secured Claims ............................... 50

11. Class 482 – Grand Landings Other Notes Secured Claims ...................... 51

12. Class 483 – North River Secured Claims ................................................. 51

13. Class 484 – North Bank Developers Secured Claims............................... 51

14. Classes 485 through 605 – General Unsecured Claims ............................ 52

15. Classes 606 through 726 – Intercompany Equity Interests....................... 52

16. Class 727 – Crescent Holdings Equity Interests ...................................... 52

| | | | |
|---|---|---|---|
| C. | | Identification of Claims and Equity Interests Impaired and Not Impaired by the Plan | 53 |
| | 1. | Impaired and Unimpaired Classes | 53 |
| | 2. | Controversy Concerning Impairment | 53 |
| D. | | Acceptance or Rejection of Plan; Effect of Rejection by One or More Classes of Claims | 53 |
| | 1. | Impaired Classes to Vote on Plan | 53 |
| | 2. | Acceptance by Class of Creditors and Holders of Equity Interests | 53 |
| | 3. | Cramdown | 53 |
| E. | | Implementation of the Plan and Related Documents | 54 |
| | 1. | Non-Substantive Consolidation | 54 |
| | 2. | Restructuring and other Corporate Transactions | 54 |
| | 3. | Cancellation of Existing Equity Interests, Notes, and Agreements | 55 |
| | 4. | Crescent Holdings Information | 56 |
| | 5. | Litigation Trust Arrangements | 56 |
| | 6. | Incurrence of New Indebtedness | 56 |
| | 7. | Illustrative Discussion of Capital Consideration Allocation | 58 |
| | 8. | Contribution of Claims and Issuance of Reorganized Equity Interests | 64 |
| | 9. | Limited Liability Company Action | 65 |
| | 10. | Intercompany Claims | 66 |
| | 11. | Abandoned Property of the Debtors' Estates | 66 |
| | 12. | Existence | 66 |
| | 13. | Effectuating Documents and Further Transactions | 67 |
| | 14. | Exemption from Securities Laws | 67 |
| | 15. | Transfer Restrictions on Reorganized Equity Interests | 67 |
| F. | | Establishment of Litigation Trust | 67 |
| | 1. | Establishment of the Litigation Trust | 67 |
| | 2. | Purpose of the Litigation Trust | 68 |
| | 3. | Litigation Trust Interests | 68 |

## TABLE OF CONTENTS
### (continued)

4.     Funding Expenses of the Litigation Trust ............................................... 68

5.     Transfer of Assets ................................................................................. 68

6.     Valuation of Assets .............................................................................. 69

7.     Litigation; Responsibilities of Litigation Trustee ................................. 69

8.     Investment Powers ............................................................................... 70

9.     Distributions; Withholding ................................................................... 70

10.    Reporting Duties .................................................................................. 71

11.    Trust Implementation .......................................................................... 72

12.    Registry of Beneficial Interests ........................................................... 73

13.    Termination .......................................................................................... 73

14.    Net Litigation Trust Recovery ............................................................ 73

G.    Voting and Distributions ................................................................................. 73

1.     Voting of Claims .................................................................................. 73

2.     Time and Manner of Distributions ....................................................... 73

3.     Timeliness of Payments ....................................................................... 74

4.     Distribution Record Date ..................................................................... 74

5.     Date of Distributions ............................................................................ 75

6.     Disbursing Agent ................................................................................. 75

7.     Rights and Powers of Disbursing Agent ............................................. 75

8.     Expenses of the Disbursing Agent ...................................................... 75

9.     Delivery of Distributions ..................................................................... 75

10.    Unclaimed Distributions ...................................................................... 76

11.    Manner of Payment .............................................................................. 76

12.    Fractional Shares ................................................................................. 76

13.    Allocation of Plan Distributions Between Principal and Interest ........... 76

14.    Minimum Cash Distributions ............................................................... 77

15.    Setoffs .................................................................................................. 77

16.    Limited Recoveries ............................................................................. 77

H.    Provisions for the Treatment of Disputed Claims ............................................ 77

| | | | |
|---|---|---|---|
| | 1. | Objections | 77 |
| | 2. | No Payment Pending Allowance | 77 |
| | 3. | Distributions After Allowance | 78 |
| | 4. | Resolution of Administrative Expense Claims and other Claims | 78 |
| | 5. | Estimation of Claims | 78 |
| | 6. | No Interest Pending Allowance | 78 |
| I. | | Executory Contracts and Unexpired Leases | 79 |
| | 1. | Assumption or Rejection of Executory Contracts and Unexpired Leases | 79 |
| | 2. | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases | 79 |
| | 3. | Inclusiveness | 79 |
| | 4. | Cure of Defaults | 79 |
| | 5. | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 80 |
| | 6. | Indemnification Obligations | 80 |
| | 7. | Insurance Policies | 80 |
| | 8. | Compensation and Benefit Programs | 81 |
| | 9. | Retiree Benefits | 82 |
| J. | | Corporate Governance and Management of the Reorganized Debtors | 82 |
| | 1. | General | 82 |
| | 2. | Operations Between Confirmation Date and Effective Date | 82 |
| | 3. | Reorganized Equity Interests | 83 |
| | 4. | Directors and Officers of Crescent Investment and the Reorganized Debtors | 83 |
| | 5. | Issuance of Non-Voting Units | 84 |
| | 6. | Management Incentive Plan | 84 |
| K. | | Conditions Precedent to the Effective Date of the Plan | 84 |
| | 1. | Conditions Precedent to Effectiveness | 84 |
| | 2. | Waiver of Conditions | 85 |
| | 3. | Effect of Failure of Conditions to Effective Date | 85 |

# TABLE OF CONTENTS
## (continued)

L.      Effects of Confirmation ........................................................................ 85

        1.      Discharge of Claims and Termination of Equity Interests...................... 85

        2.      Discharge of Debtors ............................................................. 86

        3.      Injunction or Stay................................................................. 86

        4.      Term of Injunctions or Stays..................................................... 86

        5.      Injunction Against Interference With Plan ..................................... 86

        6.      Exculpation ...................................................................... 86

        7.      Releases by Holders of Claims and Equity Interests ........................... 87

        8.      Releases of the Debtors and the Creditors' Committee ......................... 88

        9.      Releases by the Debtors and Reorganized Debtors .............................. 88

        10.     Releases by the Creditors' Committee.......................................... 88

        11.     Releases by the Lenders and Agents Under the Prepetition Credit
                Agreement and DIP Credit Agreement........................................... 89

        12.     Limitations on Exculpation and Releases of Representatives ................... 89

        13.     Retention of Causes of Action/Reservation of Rights .......................... 90

        14.     Survival of Certain Obligations .............................................. 90

M.      Retention of Jurisdiction ..................................................................... 91

N.      Miscellaneous Provisions...................................................................... 93

        1.      Effectuating Documents and Further Transactions............................... 93

        2.      Withholding and Reporting Requirements ....................................... 93

        3.      Exemption from Transfer Taxes ................................................ 93

        4.      Expedited Tax Determination .................................................. 93

        5.      Payment of Statutory Fees .................................................... 93

        6.      Post-Confirmation Date Professional Fees and Expenses ........................ 94

        7.      Dissolution of the Creditors' Committee....................................... 94

        8.      Plan Supplement .............................................................. 94

        9.      Substantial Consummation ..................................................... 94

        10.     Amendments or Modifications of the Plan ...................................... 94

        11.     Revocation or Withdrawal of the Plan.......................................... 95

        12.     Severability ................................................................. 95

13. Governing Law .......................................................................... 95

14. Binding Effect ............................................................................ 95

15. Exhibits and Schedules .............................................................. 95

16. Notices ....................................................................................... 95

17. Time ........................................................................................... 96

18. Section Headings ........................................................................ 96

V. FINANCIAL INFORMATION, PROJECTIONS AND VALUATION ANALYSIS ..................................................................................................... 96

A. Selected Historical and Projected Financial Performance of the Debtors ........... 96

B. Valuation of the Reorganized Debtors ................................................. 97

1. Estimated Reorganization Value and Reorganized Equity Interests Value .......................................................................................... 97

VI. CERTAIN FACTORS TO BE CONSIDERED ...................................... 100

A. Certain Risks Related to the Plan ....................................................... 100

B. Risks Related to the Capitalization of the Reorganized Debtors ...................... 102

C. Risks Related to the Financial and Operational Results of the Reorganized Debtors ........................................................................................... 105

D. Risks Related to the Litigation Trust ................................................... 113

VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .............. 113

A. Consequences to the Debtors ........................................................... 115

B. Consequences to Holders of Certain Claims ......................................... 115

1. Consequences to Holders of Prepetition Lender Claims ...................... 115

2. Consequences to Holders of General Unsecured Claims ..................... 119

3. Ownership and Disposition of Second Lien Facility Notes .................. 120

4. Ownership and Disposition of Reorganized Holdings Units ................. 123

C. Tax Treatment of the Litigation Trust and Holders of Litigation Trust Interests ......................................................................................... 126

D. Information Reporting and Withholding ............................................... 126

VIII. SECURITIES LAW MATTERS ...................................................... 127

A. Issuance and Resale of 1145 Securities ............................................... 127

IX. VOTING PROCEDURES AND REQUIREMENTS .............................. 129

**TABLE OF CONTENTS**
**(continued)**

A.     Voting Deadline ........................................................................................... 129

B.     Holders of Claims Entitled to Vote............................................................ 131

C.     Vote Required for Acceptance by a Class .................................................. 131

D.     Voting Procedures...................................................................................... 131

       1.     Voting Procedures.................................................................. 131

       2.     Withdrawal of Ballot............................................................. 131

X.     CONFIRMATION OF THE PLAN......................................................................... 131

A.     The Confirmation Hearing.......................................................................... 131

B.     Objections to Confirmation........................................................................ 132

C.     General Requirements for Confirmation ..................................................... 132

D.     Best Equity Interests Test ........................................................................... 134

E.     No Unfair Discrimination/Fair and Equitable Test....................................... 135

       1.     No Unfair Discrimination ...................................................... 135

       2.     Fair and Equitable Test ......................................................... 135

F.     Classification of Claims and Equity Interests.................................................. 136

G.     Feasibility................................................................................................. 136

XI.     CONCLUSION.................................................................................................... 137

# I.

# INTRODUCTION

Pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Crescent Resources, LLC ("<u>Crescent Resources</u>"), Crescent Holdings, LLC ("<u>Crescent Holdings</u>"), and their affiliated debtors and debtors in possession (collectively, "<u>Crescent</u>", or the "<u>Debtors</u>"),[1] in jointly-administered cases under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>"), submit this disclosure statement (the "<u>Disclosure Statement</u>") and plan of reorganization (the "<u>Plan</u>"), attached hereto as <u>Exhibit A</u> to all holders of Claims against and Equity Interests in the Debtors, dated January 29, 2010. **Unless otherwise defined herein, capitalized terms used herein will have the meanings ascribed to such terms in the Plan. Please note that to the extent any inconsistencies exist between the Disclosure Statement and the Plan, the Plan governs.**

The purpose of this Disclosure Statement is to provide holders of Claims and Equity Interests with adequate information about (1) the Debtors' history and businesses, (2) the Chapter 11 Cases, (3) the Plan, (4) the rights of holders of Claims and Equity Interests under the Plan, and (5) other information necessary to enable holders of Claims and Equity Interests to make an informed judgment as to whether to vote to accept or reject the Plan.

The Debtors have developed the Plan in order to provide distributions to their creditors based on the available reorganization value of the Debtors and the various Creditors' relative priority of treatment under the Bankruptcy Code and applicable non-bankruptcy law. Under the Plan, the Debtors will achieve a significant reduction in their consolidated indebtedness by exchanging their prepetition secured debt with the lenders thereof for a second lien credit facility and substantially all of the equity interests in the reorganized Debtors, and entering into a new first lien credit facility on the Effective Date. Unsecured creditors not entitled to priority will receive recovery from proceeds of litigation to be pursued by a Litigation Trust.

Pursuant to the Plan, (i) holders of DIP Claims, Professional Compensation and Reimbursement Claims, Administrative Expense Claims, and Priority Tax Claims will be paid in full in cash on the Effective Date (as defined below); (ii) holders of Other Secured Claims will receive cash, their collateral, the proceeds of the disposition of their collateral, or will have their debt reinstated in full satisfaction of their Claims; (iii) Asset-Level Debt Secured Claims[2] will for the most part receive their collateral or have their debt reinstated in full satisfaction of their Claims; (iv) holders of Allowed Prepetition Lender Claims will receive on account of such Claims such holders' Pro Rata distribution of (a) 100% of the Tranche B Notes, (b) 100% of the Tranche C Notes, (c) 100% of the Reorganized Equity Interests, subject to dilution by the

---

[1] Crescent Resources, Crescent Holdings, and all Debtor subsidiaries and non-debtor subsidiaries are defined herein as the "<u>Crescent Enterprise</u>".

[2] "Asset-Level Debt Secured Claims" means the 223 Developers Secured Claims, Grand Landings Other Notes Secured Claims, the Grand Landings Note 1 Secured Claims, the Grand Reserve Secured Claims, the Grand Woods Secured Claims, the North Bank Developers Secured Claims, the North River Secured Claims, the Portland Place Secured Claims, and the Rim Secured Claims.

Management Incentive Plan, and (d) 100% of the Class B Litigation Trust Interests; and (v) holders of General Unsecured Claims will receive on account of such Claims such holders' Pro Rata distribution of 100% of the Class A Litigation Trust Interests.

The Debtors recommend that all holders of Claims and Equity Interests vote to accept the Plan, because the Plan seeks to preserve the value of the Debtors for their Creditors, while recognizing the priority and validity of the liens of the Prepetition Lenders on substantially all the Debtors' assets and the absence of any meaningful value for other creditors absent the formation of the Litigation Trust under the Plan. The Debtors make no recommendation with respect to any particular election option that holders of Claims voting to accept the Plan may be entitled to make under the Plan.

**Please note that not all holders of Claims or Equity Interests are entitled to vote. If you are entitled to vote, a ballot will be enclosed with this Disclosure Statement. For more information as to which holders of Claims and Equity Interests may vote, please refer to Section IV.B, "Classification and Treatment of Claims." For voting procedures and important deadlines, please refer to Section IX, "VOTING PROCEDURES AND REQUIREMENTS."**

On _____, 2010, the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court") approved this Disclosure Statement as providing adequate information to allow a holder of a Claim or an Equity Interest to make an informed judgment as to whether to accept or reject the Plan. **Please note that the Bankruptcy Court's approval of this Disclosure Statement does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan or as to the accuracy or truth of the statements, information, and data contained in this Disclosure Statement.**

On _____, 2010, the Bankruptcy Court will hold a hearing to consider whether to approve and confirm the plan (the "Confirmation Hearing"). The Confirmation Hearing may be adjourned from time to time without notice. For more information on the confirmation process, please refer to Section X, "CONFIRMATION OF THE PLAN."

For your reference, the following documents are attached to the Disclosure Statement:

(i)     The Plan attached hereto as (Exhibit A);

(ii)    Order of the Bankruptcy Court, dated _____, 2010 (the "Disclosure Statement Order"), approving, among other things, this Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (attached without exhibits as Exhibit B);

(iii)   Schedule of Pending Litigation attached hereto as (Exhibit C);

(iv)    The Debtors' 2008 and 2009 unaudited financial statements and the Projected Consolidated Financial Statements (the "Projected Financial

<u>Statements</u>") for the five years ending December 31, 2014, attached hereto as (<u>Exhibit D</u>); and

       (v)      The Debtors' Liquidation Analysis attached hereto as (<u>Exhibit E</u>).

**This Disclosure Statement does not replace a careful and detailed review and analysis of the Plan by each holder of a Claim or Equity Interest. Please use this Disclosure Statement to aid and supplement that review. The description of the Plan contained herein is only a summary and is qualified in its entirety by reference to the full text of the Plan; if any inconsistencies exist between the Plan and this Disclosure Statement, the Plan governs. The Debtors urge holders of Claims and Equity Interests to review the Plan and any related attachments in order to obtain a full understanding of the Plan.**

**<u>IRS Circular 230 Notice</u>:    To ensure compliance with IRS Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (B) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (C) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.**

*   *   *

**The offer of Reorganized Equity Interests in exchange for certain existing Claims has not been registered under the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), or similar state securities or "blue sky" laws. The issuance of the Reorganized Equity Interests pursuant to the Plan is being made pursuant to the exemption available under section 1145 of the Bankruptcy Code. The issuance of the Reorganized Equity Interests has not been approved or disapproved by the Securities and Exchange Commission (the "<u>SEC</u>") or by any state securities commission or similar public, governmental, or regulatory authority, and neither the SEC nor any such authority has passed upon the accuracy or adequacy of the information contained in this Disclosure Statement or upon the merits of the Plan.**

**Certain statements contained in this Disclosure Statement, including the Projected Financial Statements, are forward-looking statements. Forward-looking statements usually can be identified by the use of words like "believes," "expects," "may," "will," "should," "anticipates," "estimates," "projects," or the negative thereof. They may be used in discussions of strategy, which typically involves risk and uncertainty, and they generally are based upon projections and estimates rather than historical facts and events. Forward-looking statements are subject to a number of risks and uncertainties that could cause the Debtors' actual results or performance to be materially different from the future results or performance expressed in or implied by those statements. Some of those risks and uncertainties include:**

- **Timing of the recovery of the United States' real estate market;**

- **Changes in general economic conditions;**

- **Availability of and access to capital;**

- **Recovery tied to strength or weakness of the economy of the southeast United States;**

- **Changes in the competitive environment;**

- **Unanticipated operating results;**

- **High carry costs for certain assets; and**

- **Changes in mortgage-lending standards and interest rates.**

**The use of forward-looking statements should not be regarded as a representation that any of the projections or estimates expressed in or implied by those forward-looking statements will be realized, and actual results may vary materially. There can be no assurance that any of the forward-looking statements contained herein will prove to be accurate. All forward-looking statements are expressly qualified by the discussion above.**

## II.

## EXECUTIVE SUMMARY

### A.    Summary of Classification and Treatment of Claims and Equity Interests Under the Plan

The following summarizes the classification of Claims and Equity Interests under the Plan and the respective distributions and recoveries to each such Class. The following summary is qualified in its entirety by reference to the full text of the Plan. For a more detailed description of the terms of the Plan, please refer to Section IV, "THE PLAN."

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| Unclassified | Administrative Expense Claims | Paid in full in Cash | No | $16,000,000 | 100% |
| Unclassified | Professional | Paid in full in Cash | No | $12,500,000 | 100% |

---

[3]  The amounts set forth herein are the Debtors' estimates based on the Debtors' books and records and preliminary review of proofs of claim filed to date. Actual amounts will depend upon the final reconciliation and allowance of Claims including Administrative Expense Claims. Accordingly, the actual amounts may vary from the amounts set forth herein. The Debtors reserve the right to contest any Claim.

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | Compensation and Reimbursement Claims | | | | |
| Unclassified | DIP Claims | Paid in full in Cash | No | $30,000,000 | 100% |
| Unclassified | Priority Tax Claims | Paid in full in Cash | No | $402,178[4] | 100% |
| Classes 1-121 | Other Priority Claims | Claims in these Classes are unimpaired.<br><br>Each holder of an Allowed Other Priority Claim will receive, on account of their Claims against the Debtors and their estates, Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Allowed Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable. | No<br><br>(Deemed to accept the Plan) | $11,434,218[5] | 100% |
| Classes 122-242 | Secured Tax Claims | Claims in these Classes are unimpaired.<br><br>Except to the extent that a holder of an Allowed Secured Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, on account of their Claims against the Debtors and | No<br><br>(Deemed to accept the Plan) | $6,383,943[6] | 100% |

---

[4] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $9,442,738, prior to reduction.

[5] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $12,167,869, prior to reduction.

[6] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $23,729,968, prior to reduction.

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | their estates, at the sole option of the Reorganized Debtors: <br><br> (i) Cash in an amount equal to such Allowed Secured Tax Claim on the Effective Date, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code; <br><br> (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at a rate determined under applicable non-bankruptcy law in accordance with section 511 of the Bankruptcy Code, over a period ending not later than five (5) years after the Petition Date; <br><br> (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim; or <br><br> (iv) to the extent that the Collateral securing such Allowed Secured Tax Claim is transferred pursuant to sections 4.5 through 4.13 of the Plan, retention of the Allowed Secured Tax Claim holder's Lien in the | | | |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Collateral. | | | |
| Classes 243-354 | Prepetition Lender Claims | Claims in these Classes are impaired.<br><br>The Prepetition Lender Secured Claims shall be Allowed Claims in the amount of the Reorganization Value of the Reorganized Debtors, and are not subject to offset, defense, counterclaim, reduction, or credit of any kind whatsoever.<br><br>The Prepetition Lender Deficiency Claims shall be Allowed Claims in the aggregate amount of $1,551,063,591.57 less the amount of the Allowed Prepetition Lender Secured Claims and less all payments made subsequent to the Commencement Date in respect of the Prepetition Lender Claims, not subject to offset, defense, counterclaim, reduction, subordination, disallowance or credit of any kind whatsoever.<br><br>On the Effective Date, each holder of an Allowed Prepetition Lender Secured Claim shall receive on account of such holder's Claim such holder's Pro Rata distribution of: | Yes | $1,495,168,000[7] | 40.46% |

---

[7] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $1,521,003,538, prior to reduction.

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | (i) 100% of the Tranche B Notes, | | | |
| | | (ii) 100% of the Tranche C Notes, and | | | |
| | | (iii) 100% of the Reorganized Equity Interests, pursuant to the Capital Consideration Allocations made in accordance with Section 7.6(v) of the Plan, subject to dilution by the Management Incentive Plan. | | | |
| | | The terms, rights and designations of the Tranche B Notes, the Tranche C Notes and the Reorganized Equity Interests will be more fully described in the Plan Supplement. Each holder of an Allowed Prepetition Lender Claim receiving Reorganized Equity Interests distributed hereunder will receive them in the form of Crescent Investment Units unless such holder elects, on its properly completed ballot, to instead receive its distribution in the form of Reorganized Holdings Series B Units. | | | |
| | | On the Effective Date, each holder of an Allowed Prepetition Lender Deficiency Claim shall receive on account of such holder's Claim such holder's Pro Rata distribution of 100% of the Class B Litigation | | | |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Trust Interests. | | | |
| Classes 355-475 | Other Secured Claims | Claims in these Classes are unimpaired.<br><br>Except to the extent that a holder of an Allowed Other Secured Claim against the Debtors agrees to a less favorable treatment, at the sole option of the Debtors or Reorganized Debtors:<br><br>(i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or<br><br>(ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such Allowed Other Secured Claim, either (v) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed | No<br><br>(Deemed to accept the Plan) | $4,573,462[8] | 100% |

---

[8] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $160,933,918, prior to reduction.

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code; (w) Cash in an amount and on such other terms and conditions as agreed to between the holder of such Allowed Other Secured Claim, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand; (x) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, to the extent of the value of the holder's security interest in such Collateral; (y) the Collateral securing such Allowed Other Secured Claim; or (z) such other distribution as necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code.   In the event the Debtors or Reorganized Debtors elect to treat a Claim under clause (v), (w) or (x) of this Section, the Liens securing such Secured Claim shall be deemed released upon satisfaction of the requirements set forth in (v), (w) or (x) above. | | | |
| Class 476 | 223 Developers Secured Claims | Each holder of an Allowed 223 Developers Secured Claim will receive, in full satisfaction of such | Yes | $18,603,525 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Claim:<br><br>(i) the Collateral securing such Allowed 223 Developers Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed 223 Developers Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed 223 Developers Secured Claim having a present value in excess of the amount of such Allowed 223 Developers Secured Claim. | | | |
| Class 477 | Grand Woods Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed Grand Woods Secured Claim will receive, in full satisfaction of such Allowed Grand Woods Secured Claim:<br><br>(i) the Collateral securing such Allowed Grand Woods Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed Grand Woods Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed Grand Woods Secured Claim having a present | Yes | $3,779,846 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | value in excess of the amount of such Allowed Grand Woods Secured Claim. | | | |
| Class 478 | Portland Place Secured Claims | Claims in this Class are unimpaired.<br><br>Except to the extent that a holder of an Allowed Portland Place Secured Claim against the Debtors agrees to a less favorable treatment, each Allowed Portland Place Secured Claim will be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code. | No<br><br>(Deemed to accept the Plan) | $425,926 | 100% |
| Class 479 | Rim Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed Rim Secured Claim will receive, in full satisfaction of such Claim:<br><br>(i) the Collateral securing such Allowed Rim Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed Rim Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed Rim Secured Claim having a present value in excess of the amount of such Allowed Rim Secured Claim. | Yes | $64,425 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| Class 480 | Grand Reserve Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed Grand Reserve Secured Claim will receive, in full satisfaction of such Claim;<br><br>(i) the Collateral securing such Allowed Grand Reserve Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed Grand Reserve Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed Grand Reserve Secured Claim having a present value in excess of the amount of such Allowed Grand Reserve Secured Claim. | Yes | $2,030,511 | 100% |
| Class 481 | Grand Landings Note 1 Secured Claims | Each holder of an Allowed Grand Landings Note 1 Secured Claim will receive, in full satisfaction of such Claim:<br><br>(i) Cash in an amount equal to such Allowed Grand Landings Note 1 Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or | Yes | $545,049 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | (ii) any treatment agreed to by the holder of such Allowed Grand Landings Note 1 Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed Grand Landings Note 1 Secured Claim having a present value in excess of the amount of such Allowed Grand Landings Note 1 Secured Claim. | | | |
| Class 482 | Grand Landings Other Notes Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed Grand Landings Other Notes Secured Claim shall receive, in full satisfaction of such Claim:<br><br>(i) the Collateral securing such Allowed Grand Landings Other Notes Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed Grand Landings Other Notes Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment shall not provide a return to the holder of such Allowed Grand Landings Other Notes Secured Claim having a present value in excess of the amount of such Allowed Grand Landings Other Notes | Yes | $1,530,515 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Secured Claim. | | | |
| Class 483 | North River Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed North River Secured Claim will receive, in full satisfaction of such Claim:<br><br>(i) the Collateral securing such Allowed North River Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such Allowed North River Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed North River Secured Claim having a present value in excess of the amount of such Allowed North River Secured Claim. | Yes | $34,742,517 | 100% |
| Class 484 | North Bank Developers Secured Claims | Claims in this Class are impaired.<br><br>Each holder of an Allowed North Bank Developers Secured Claim will receive, in full satisfaction of such Claim:<br><br>(i) the Collateral securing such Allowed North Bank Developers Secured Claim, or<br><br>(ii) any treatment agreed to by the holder of such | Yes | $20,000,000 | 100% |

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Allowed North Bank Developers Secured Claim, on the one hand, and the Debtors on the other hand; provided that such treatment will not provide a return to the holder of such Allowed North Bank Developers Secured Claim having a present value in excess of the amount of such Allowed North Bank Developers Secured Claim. | | | |
| Classes 485-605 | General Unsecured Claims | Claims in these Classes are impaired.<br><br>On the Effective Date, or as soon thereafter as is practicable, each holder of an Allowed General Unsecured Claim against a Debtor in a Class of General Unsecured Claims shall be entitled to receive on account of its Claims against the Debtors and their estates its Pro Rata share of the Class A Litigation Trust Interests.   In addition, the Class Litigation Trust Interests of any Accepting General Unsecured Claims Class shall be deemed senior to the Class B Litigation Trust Interests as contemplated by Section 8.3 of the Plan. | Yes | $428,655,801[9] | Undetermined<br><br>No value has been attributed to the Litigation Trust Interests. |
| Classes 606-726 | Intercompany Equity Interests | Claims in these Classes are unimpaired. | No<br><br>(Deemed to | N/A | N/A |

---

[9] Estimated amount of Allowed Claims. The gross amount of Claims filed and scheduled in this Class is approximately $1,210,987,765, prior to reduction.

| CLASS | DESIGNATION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNT OF CLAIMS OR EQUITY INTERESTS IN CLASS[3] | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| | | Each Allowed Intercompany Equity Interest will be retained. | accept the Plan.) | | |
| Class 727 | Crescent Holdings Equity Interests | Claims in this Class are impaired.<br><br>Each holder of an Allowed Crescent Holdings Equity Interest will receive no distribution for and on account of such Crescent Holdings Equity Interests, and such Crescent Holdings Equity Interests will be cancelled on the Effective Date. | No<br><br>(Deemed to reject the Plan.) | N/A | 0% |

**B.      Summary of Voting Procedures**

        If you are entitled to vote, you will receive a ballot with this Disclosure Statement. On the ballot, you may elect either to accept or reject the Plan. If you return a ballot that does not indicate either an acceptance or rejection of the Plan, your vote will be counted as a vote to accept the Plan. If you return a ballot that indicates both an acceptance and rejection of the Plan, your vote will not be counted and will be disregarded.

        _____, 2010 is the record date to determine which holders of Claims or Equity Interests may vote to accept or reject the Plan.

        _____, 2010 _____ p.m. (Central Standard Time) is the last day to vote (the "Voting Deadline").

Please send your ballot to:

**FINANCIAL BALLOTING GROUP LLC**
**ATTN: CRESCENT RESOURCES BALLOT TABULATION**
**757 THIRD AVENUE, 3RD FLOOR**
**NEW YORK, NEW YORK 10017**

**- OR -**

**tabulation@fbgllc.com**

**Financial Balloting Group LLC (the "Solicitation Agent") must receive your ballot by (i) mail at street address above or (ii) e-mail in PDF form, each before the Voting Deadline for your vote to be counted.** The Solicitation Agent will not accept ballots sent by facsimile. If you are a holder of a Claim or an Equity Interest entitled to vote but did not receive a ballot, please contact the Solicitation Agent to obtain a ballot. If your ballot is damaged or lost, you should also contact the Solicitation Agent.

For more information on voting procedures, please refer to Section IX, "VOTING PROCEDURES AND REQUIREMENTS." Before voting, please review and consider all information outlined in the Plan, this Disclosure Statement, and any documents attached thereto.

## C.      Overview of the Chapter 11 Process

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself and all economic parties in interest. In addition to permitting the rehabilitation of a debtor, chapter 11 promotes equality of treatment of similarly situated claims and similarly situated equity interests with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by the bankruptcy court having jurisdiction over a particular chapter 11 case makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor of, or holder of an equity interest in, a debtor. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

In order to solicit acceptances of a proposed plan, however, section 1126 of the Bankruptcy Code requires a debtor and any other plan proponent to conduct such solicitation pursuant to a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. The Debtors are submitting this Disclosure Statement in accordance with the Disclosure Statement Order and the requirements of section 1126 of the Bankruptcy Code.

**III.**

**OVERVIEW OF THE DEBTORS' OPERATIONS
AND THE CHAPTER 11 CASES**

## A.      Formation of the Debtors' Operations

Prior to September 2006, Crescent Resources was a single-member limited liability company owned by Duke Ventures, LLC ("Duke"). On September 6, 2006, Duke closed an agreement whereby it created a newly formed joint venture, Crescent Holdings (the "2006 Duke Transaction"). Pursuant to the terms of the 2006 Duke Transaction, Duke contributed all of its membership interests in Crescent Resources to Crescent Holdings, and subsequently, various Morgan Stanley members acquired a 49% membership interest in Crescent Holdings from Duke.

## B.     Description of the Debtors' Operations

The Crescent Enterprise is a major real estate development and management organization with interests in nine states in the southeastern and southwestern United States. Since 1969, it has been developing, owning, leasing, managing, and selling real estate that includes master-planned residential and resort communities and office, industrial, retail, and mixed-use developments. The Crescent Enterprise is headquartered in Charlotte, North Carolina and operates through four divisions (each a "Division", collectively, the "Divisions"): residential, commercial, multifamily, and land management. The residential division (the "Residential Division") is the Crescent Enterprise's largest division, comprising approximately 42% of its total assets. The Residential Division includes 41 master-planned communities and four condominium projects totaling 53,404 acres of developed land. The commercial division (the "Commercial Division") accounts for approximately 19% of the Crescent Enterprise's total assets. The Commercial Division has eight active projects, currently under development, as well as 1,617 acres of commercially-zoned, undeveloped land. The multifamily division (the "Multifamily Division") accounts for approximately 3% of the Crescent Enterprise's total assets. The Multifamily Division includes four projects in various stages of development, totaling 1,308 units and an additional 195 acres of entitled, but undeveloped land. The land management division (the "Land Management Division"), manages approximately 65,000 of acres of undeveloped land and accounts for approximately 36% of the Crescent Enterprise's total assets. The Crescent Enterprise is respected in the real estate industry for its development and management expertise across these various Divisions, and each of the Divisions employs key, experienced managers to operate its projects. Below is an overview of the Debtors' current corporate structure.[10]

---

[10]  All percentages herein are based on total assets by Division, including project-level assets, investments in unconsolidated affiliates and notes receivable. The measurement for total assets by Division does not include "other" assets such as cash and cash equivalents, restricted cash, accounts receivable, and goodwill.





| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Green Fields Investments, LLC (NC) | Gulf Shores Waterway Development Holdings, LLC (NC) NON-FILER | Hammock Bay Crescent, LLC (DE) | Hidden Lake Crescent, LLC (DE) | LandMar Group, LLC (DE) [See following Chart for Subsidiaries] | LandMar Management, LLC (DE) | McNinch-Hill Investments, LLC (NC) | Milford Estates, LLC (NC) |

75%

Gulf Shores Waterway Development, LLC (NC)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Nine Corporate Centre Holding Company, LLC (DE) | Old Wildlife Club, LLC (DE) | Oldfield, LLC (SC) | Palmetto Bluff Investments, LLC (SC) | Panama City Development, LLC (DE) | Park/Marsh, LLC d/b/a Bella Vita on Park (DE) | Parkside Development, LLC (FL) | Piedmont Row Development, LLC (DE) |

New Riverside, LLC (SC)

Palmetto Bluff Development, LLC (SC) (2% Interest in Headwaters Development Limited Partnership)

Palmetto Bluff Uplands, LLC (SC)

| May River Forest, LLC (SC) | May River Golf Club, LLC (SC) | Palmetto Bluff Club, LLC (SC) | Palmetto Bluff Lodge, LLC (SC) | Palmetto Bluff Real Estate Company, LLC (SC) |
|---|---|---|---|---|

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Seddon Place Development, LLC (DE) | Springfield Crescent, LLC (DE) | StoneWater Bay Properties, LLC (NC) | Stratford on Howard Development, LLC (DE) | Sugarloaf Country Club, LLC (GA) | Sugarloaf Properties, LLC (GA) | Sugarloaf Realty, LLC (GA) | The Farms, LLC (NC) | The Oldfield Realty Company, LLC (SC) |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| The Parks at Meadowview, LLC (DE) | The Parks of Berkeley, LLC (DE) | The Ranch at the Rim, LLC (DE) | The Retreat on Haw River, LLC (DE) | The River Club Realty, LLC (GA) | The River Country Club, LLC (GA) | The Sanctuary at Lake Wylie, LLC (DE) | Tussahaw Development, LLC (GA) | Two Lake Pony Farm, LLC (NC) |



## 1. The Residential Division

The Residential Division is an industry leader in the development of master-planned communities ("MPCs"). The Residential Division operates with a strong focus on unique, one-of-kind assets in premier residential destinations. The Division's brand is best known for its authentic communities and the quality of its operations, which attracts buyers in the primary, secondary, and retirement home markets. Currently, the Residential Division has 41 MPCs and four condominium projects.

Due to the recent downturn in the real estate market, certain of the Division's developments have a large number of homes and lots for resale which significantly impact the Division's ability to sell Crescent-owned lots. However, certain of the Division's more prestigious residential communities have been less affected by these market conditions.

### a. Home Lots and Land Parcels

Developed home lots and undeveloped land parcels in various residential communities constitute a major portion of the Residential Division's inventory.

### b.    *Residential Communities*

The Debtors currently own approximately 45 residential communities, including the award-winning Palmetto Bluff development in Bluffton, South Carolina and the Lake James development in the mountains of North Carolina. While these residential communities have experienced a significant downturn in sales activity in the last few years, the Debtors are confident that they can control both the hard and soft costs of maintaining these assets until the real estate market improves. Many of these residential communities have golf and other recreational clubs as part of their amenities, which the Debtors have subsidized, in part, over the last few years. However, the Debtors have begun and will continue to implement cost-saving strategies as part of the Plan to minimize the subsidy funding requirements. Some of the Debtors' residential communities are highlighted below.

### (i)    Palmetto Bluff (Bluffton, South Carolina)

Palmetto Bluff, the Debtors' premier development, is comprised of 22,000 acres of which roughly 15,000 acres the Debtors own (including 7,300 acres of managed forest and conservation areas), in addition to 32 miles of riverfront property along the May, Cooper, and New Rivers. Palmetto Bluff is located midway between Savannah, Georgia and Hilton Head Island, South Carolina. This development is a high-end destination for primary, secondary, and retirement home buyers. Most of the infrastructure is complete, including an equestrian facility, a Jack Nicklaus signature golf course, and a 50-room award-winning luxury inn (the "Inn"), and approximately 600 developed lots have been sold; however, the entire tract is not yet developed (roughly 28% of the project has been developed based on the current plan). When fully developed, the Palmetto Bluff community will include a series of communities totaling between 2,400 to 2,800 dwelling units.[11]  The remaining land and dwelling-unit entitlements (consisting of approximately 75% of the tract) are classified as investment land and will be evaluated for development opportunities in smaller increments over the remaining life of the project.

### (ii)    Lake James (Lake James, North Carolina)

The Lake James residential development is located in Burke and McDowell counties in the mountains of western North Carolina and is a short drive from Charlotte and Raleigh. The developments are in close proximity to several state and national parks and wilderness areas such as Linville Gorge, South Mountains State Park, and Pisgah National Forest. The Lake James communities includes three active projects, namely, 1780, Old Wildlife Club, and Black Forest Phase II, consisting of platted lots for approximately 293 dwelling units on 1,855 acres. Future development is possible but will depend on the absorption rates of the existing phases. Lake James offers a variety of lots with waterfront or mountain views ranging from 1 to 14 acres in size. Lake James also includes a full-service amenity area known as Camp Lake James that offers members a wide-array of facilities, including a social hall with a fitness center, swimming pool, tennis courts, boat docks, lake-front beach, and an extensive nature trail system.

---

[11]  The Debtors have been funding operational deficits at the Inn. The Debtors believe that the Inn is an important part of the overall success of the Palmetto Bluff development.

This development continues to be a promising destination for buyers in the primary and secondary home markets; however, the Debtors have been required to provide deficit funding to operate some of the facilities.

### 2. The Commercial Division

The Commercial Division offers three types of business services: (i) building and land investment management services, (ii) property management and leasing services, and (iii) property development and construction management services. The Commercial Division is primarily concentrated in the southeast United States and targets urban centers with significant populations, employment growth, and transportation centers, such as Charlotte, Atlanta, Nashville, Tampa, and Orlando.

Historically, the Commercial Division's strategy has been to develop high-end office and commercial buildings, lease them with tenants, and subsequently convey the property interest while retaining a role as property manager and leasing agent for the new owner. Going forward, the Debtors intend to continue with the same strategy for the Commercial Division.

#### a. Building and Land Investment Management Services

The Commercial Division currently oversees 31 distinct land developments, including ten vertical development projects. These projects include approximately 1,600 gross acres of land which are entitled for approximately 14.2 million square feet of future development and existing buildings under development totaling approximately two-million square feet.

These properties include high-rise and suburban office, industrial/distribution, and retail/neighborhood shopping centers. Ownership structures include wholly-owned projects, fee build-to-suit projects, and joint ventures where certain of the Debtors have a co-investment interest in the project. Each of these properties (excluding build-to-suit projects) are being offered in their respective marketplaces on a "for lease" basis and are in various stages of construction and or lease-up.

#### b. Property Management and Leasing Services

The Commercial Division's property-management and leasing services have been consistently profitable and are uniquely positioned for future growth.

The Commercial Division currently manages and/or leases approximately 9.9 million square feet of commercial property, including owned and joint-venture properties, as well as third-party-owned institutional properties. The Commercial Division's customers include many of the top institutional owners of real estate in the United States.

The Commercial Division's property-management and leasing platform represents not only a profitable business segment but also provides a support platform for its other service offerings.

Since 2007, the Commercial Division has managed the construction of 15 buildings, comprising approximately three million square feet, and has earned approximately $21.1 million in management and service fees.

### c.      Development and Construction Management Services

The Commercial Division manages the development and construction of each of its land and building positions and also works on behalf of third-parties, primarily on a build-to-suit basis. The Commercial Division's team is deeply experienced across all product-line offerings including land acquisition and due diligence work, project entitlements, land and infrastructure development, building shell construction, and tenant build-out. Over the last five years, the Commercial Division has managed the construction of 20 buildings, comprising 4.6 million square feet.

The Debtors will focus on maintaining the Division's valuable assets through developing them on their own account, current partnerships ("Current Partnerships"), or by forming new strategic joint ventures ("Strategic JVs", together with the Current Partnerships, "Commercial JVs"). The Commercial JV strategy provides the Division with the opportunity to make a high return on land assets, while mitigating the risk of the Debtors' current exposure to the commercial real estate market. For those projects where the Debtors have no joint venture partners, the Commercial JV strategy will provide the Debtors with an opportunity to monetize a portion of their current interests and investments in the Commercial Division over the next ten years, while preserving the Debtors' opportunity to participate in the recovery of the real estate and capital markets. Additionally, the Commercial JV strategy will give the Debtors a platform to expand and grow their property and development management services.

The following table highlights some of the larger developments that the Commercial Division has completed.

| Project Name | Location | Type | Square Feet |
|---|---|---|---|
| Potomac Yards I and II | Arlington, VA | Office | 619,920 |
| Piedmont Town Center One and Two | Charlotte, NC | Office | 417,013 |
| International Plaza One | Tampa, FL | Office | 383,694 |
| International Plaza Three | Tampa, FL | Office | 285,000 |
| Lakemont East – Wells Fargo BTS (1&2) | Charlotte, NC | Office | 334,218 |
| Central Florida Research Park | Orlando, FL | Office | 160,000 |
| Merial Build to Suit – 500 Satellite | Atlanta, GA | Office | 132,250 |
| Corporate Center 8 – Cool Springs | Nashville, TN | Office | 156,160 |
| AIG Insurance – Deerfield Two | Atlanta, GA | Office | 132,620 |
| | | | **2,620,875** |

Some of the major on-going projects in the Commercial Division are highlighted below:

> **(i)** Phipps Tower (Atlanta, Georgia)

Phipps Tower is being developed pursuant to a joint-venture agreement between a non-debtor affiliate and a third party. The project is located in the Buckhead submarket of Atlanta, Georgia and will be a 486,917 rentable square foot, class-A certified office tower and parking structure. The project is currently 95% complete and delivery is scheduled for the first quarter of 2010. The Buckhead market is extremely competitive and has four new commercial towers comprising two million square feet that will be delivered in the next 12 months.

> **(ii)** Corporate Centre Nine (Nashville, Tennessee)

Corporate Centre Nine is a 155,919 square foot office building in the Cool Springs submarket of Nashville, Tennessee. The project was completed in December 2007 and is currently 7% leased. The Debtors have developed and sold 8 other buildings in the Cool Springs office park totaling over 1.1 million square feet.

> **(iii)** Greenway Centre One (Nashville, Tennessee)

Greenway Centre One is a 154,737 square foot, 5-story, class-A office building in the Cool Springs submarket of Nashville, Tennessee. It is adjacent to Corporate Centre Nine. Construction was completed in December 2009 and there are numerous leasing prospects active in the market.

### 3. The Multifamily Division

The Multifamily Division develops a range of mixed-use, apartment communities. In particular, the Multifamily Division has expertise in superior-class, garden-style, and urban developments. It has recently undertaken four multifamily developments consisting of 1,300 units with a total cost of approximately $182 million. All of the Multifamily Division's developments are held by joint ventures between non-debtor subsidiaries of Crescent Resources and third parties. Additionally, Crescent Resources or its wholly-owned subsidiary own approximately 15 parcels of land. Like the Commercial Division, the Multifamily Division also earns revenues through development and other service fees.

Currently, there are four developments in the Multifamily Division, which are either complete or near completion. The Debtors also hold a 182-acre land portfolio which has the necessary zoning and development rights to build approximately 3,300 multifamily units. Certain of the Debtors' assets in this division are summarized below:

> **a.** *Circle at Crosstown (Tampa, Florida)*

Circle at Crosstown is a joint venture between a non-debtor subsidiary of Crescent Resources, Crescent Florida Developer, LLC, and a third party. The development has been completed and includes 300 garden-style units in 12 three-story buildings, and 6 two-story

carriage unit buildings. The community's amenities include a state-of-the-art fitness center, cyber café, and a pool recreation facility.

### b. Circle at South End (Charlotte, North Carolina)

Circle at South End is owned by a joint venture between Crescent South and Bland, LLC, a non-debtor subsidiary of Crescent Resources, and a third party. This mixed-use project, includes 360 apartments and 8,000 square feet of retail space. The community is located on a five-acre site in the South End district of Charlotte.

### c. Circle at Concord Mills (Concord, North Carolina)

Circle at Concord Mills is owned by a joint venture between a non-debtor subsidiary of Crescent Resources, CFM Concord, LLC, and a third party. Circle at Concord Mills is located on 22 acres in Concord, North Carolina and includes 312 garden-style apartment units, a clubhouse, and a pool. Circle at Concord Mills has received several awards including the Audubon International's Signature Sanctuary award, which was the first of its kind in the country.

As of the date of this Disclosure Statement, the construction phase for the entire community is complete and is currently in lease-up.

### 4. Land Management

The Land Management Division manages approximately 65,000 acres of raw land (the "Legacy Land") located in four main geographic areas from the foothills of North Carolina, through upstate South Carolina and into southeast Georgia. This Division increases the value of the Legacy Land through the entitlements process, environmental conservation, sound land management, and land improvements. The Land Management Division's main areas of Legacy Land are known as Catawba, Great Falls, Keowee, and Morganton.

The Land Management Division focuses on acquiring undeveloped, raw land in rural markets that demonstrate potential for growth. Typically, the Land Management Division identifies opportunities to purchase large unentitled and undeveloped tracts of land, develops the land for wholesale or retail sale, and then sells the land for increased values. Currently, the Debtors have two investment joint ventures pursuant to which they own the projects known as Wildcat and Bertha Mineral.

The Debtors believe that the Legacy Land holdings are valuable to the Debtors' estates. Due to low carry costs, the Land Management Division's overarching strategy is to hold these valuable assets for the future real estate rebound and to avoid short-sighted discounts as much as possible.

To help prospective buyers facilitate their purchase of Legacy Land, the Debtors have recently extended credit to buyers ("Legacy Land Seller Financing"). However, the Debtors intend to phase out Legacy Land Seller Financing by the end of 2010.

The four Legacy Land holdings are summarized below:

### a.    Catawba (North Carolina)

Catawba located in the path of growth north and south of Charlotte, has the most urban land holdings and is currently in the most advanced development phase of all the Legacy Land holdings. The Land Management Division is currently focused on targeting institutional investors, adjacent owners, environmental trusts, or municipalities to invest in or purchase land in Catawba; however, the market is not currently supporting many entitled-land-tract sales in the mixed-use and commercial sectors. The Debtors fully expect the market for these assets to rebound.

### b.    Great Falls (South Carolina)

Great Falls primarily consists of rural tracts of land with some waterfront and water-view land holdings. The Debtors are marketing Great Falls to adjacent land owners who may be interested in expanding their land holdings, as well as real-estate investors and developers. Great Falls is strategically located between Charlotte and Columbia, which is anticipated to be an area suited for future growth.

### c.    Keowee (South Carolina/Georgia)

Keowee is located in upstate South Carolina (with one tract in Georgia) and spans portions of the mountainous terrain around Lake Jocassee, the rolling hills around Lake Keowee, and the Savannah River Valley. The area has traditionally been popular for second home buyers and as a resort destination with appeal across the eastern seaboard.

### d.    Morganton (North Carolina)

Morganton's past success has been driven by the rural second home market and its proximity to the North Carolina mountains. The Debtors are focused on marketing Morganton to adjacent owners and institutional buyers, such as nature conservancies or the State. The lakes on the property, Lake James and Lake Rhodhiss, have been among the primary draws for customers in the past, and the Debtors expect that the market for waterfront and water-view land will return.

## 5.    Crescent Resources' Employee and Management Overhead

As of December 31, 2009, the Debtors employed approximately 220 employees, of which 135 are full-time salaried employees, 73 are full-time hourly employees, 6 are part-time salaried employees, 5 are part-time hourly employees, and 1 is a temporary employee. Since January 2007, the employee count has been reduced from 417 employees to the current headcount. The Debtors have suspended certain bonus plans, incentive plans, and 401(k) matching plans during the pendency of the Debtors' cases. The reduction in work force and plan savings have provided the Debtors with approximately $13 million in savings.

Additionally, in an effort to save on overhead costs, the Debtors have closed or significantly downsized offices in Washington, D.C., Dallas, and Jacksonville as well as certain of the Residential Division's sale centers.

## C.    **Significant Indebtedness**

The Debtors' significant prepetition indebtedness is described below. In addition to this indebtedness for money borrowed, the Debtors estimate that they have prepetition trade accounts payable and other general unsecured claims of approximately $430 million.

### 1.    **The Prepetition Credit Agreement**

Before the Commencement Date, the Debtors were parties to the Prepetition Credit Agreement, by and among the Prepetition Lenders and Bank of America, as administrative agent (the "Agent").

The Prepetition Credit Agreement provides for (i) a term loan facility in the amount of $1,225,000,000, (ii) a revolving credit commitment in the amount of $300,000,000, which was to automatically reduce to $275,000,000 on December 30, 2009, (iii) a swing line commitment in the amount of $50,000,000, which reduces borrowings available under the revolving credit commitment, and (iv) a letter of credit commitment in the amount of $150,000,000, which reduces borrowings available under the revolving credit commitment (collectively, the "Prepetition Loan"). Obligations arising under the Prepetition Credit Agreement are direct obligations of Crescent Resources. Such direct obligations are guaranteed (the "Guaranty") by (i) Crescent Holdings and (ii) many of the additional Debtors, pursuant to the terms of (A) the Prepetition Credit Agreement, (B) that certain Amended and Restated Joinder Agreement, dated as of June 17, 2008, by and between the entities party thereto and the Agent, and (C) that certain Joinder Agreement, dated as of July 25, 2008, by and between the entities party thereto and the Agent (the Joinder Agreements in (B) and (C), collectively, the "Joinder Agreements").

In addition to the Guaranty, certain of the Debtors[12] (the "Pledgors") entered into that certain Pledge Agreement, dated September 7, 2006, by and between the Pledgors and the Agent and those certain Joinder Agreements, pursuant to which the Pledgors pledged to the Agent 100% of the capital stock of any domestic subsidiary, direct or indirect, other than a non-pledged subsidiary (the "Pledged Shares"). Certain of the Debtors also granted mortgages or deeds of trust on certain real properties (the "Mortgaged Property"). Crescent Resources entered into that certain Account Security, Pledge, Assignment and Control Agreement, dated August 24, 2007, pursuant to which Crescent Resources granted to the Agent a security interest and control over all deposit accounts opened by Crescent Resources with the Agent.

---

[12]  The Debtors holding equity interests pledged on the Commencement Date under the Pledge Agreement, include: Crescent Resources; Crescent Holdings; CLT Development, LLC, Crescent Potomac Yard, LLC, Crescent Twin Creeks, LLC; Crescent/Arizona, LLC; Palmetto Bluff Development, LLC; Palmetto Bluff Investments, LLC; Twin Creeks Management, LLC; Twin Creeks Property, Ltd.; LandMar Group, LLC; Hawk's Haven Joint Development, LLC; and Hawk's Haven Sponsor, LLC.

The aggregate principal amount of indebtedness owing under the Prepetition Credit Agreement as of the Commencement Date was approximately $1,494,377,346, plus other outstanding obligations under secured swap contracts with certain of the Prepetition Lenders in an amount not less than $27,154,794 plus additional fees, costs, interest, and reimbursable expenses.

2.      **The Asset-Level Debt**

Approximately seven of the Debtors also have secured asset-level debt in the form of construction loans, mortgage loans, and seller-financed loans. As of the Commencement Date, there was approximately $89,110,601 in outstanding asset-level debt. Below is a description of each of these asset-level debt credit facilities.

a.      ***Grand Woods***

Before the Commencement Date, one of the Debtors, Grand Woods Developers, LLC, entered into the following documents in favor of Palm Coast Forest, LLC, as lender (the "Grand Woods Lender"):

(i) a certain Real Estate Mortgage, dated August 28, 2006, as modified by a certain Modification of Note and Mortgage Agreement dated November 30, 2007 (the "2006 GW Mortgage"), securing a promissory note in the original principal amount of $1,800,000, dated August 28, 2006, as modified by a certain Modification of Note and Mortgage Agreement dated November 30, 2007 (the "2006 GW Note"); and

(ii) a certain Real Estate Mortgage dated November 30, 2007, as modified by a certain Modification of Note and Mortgage Agreement dated December 29, 2008 (the "2007 GW Mortgage" and, together with the 2006 GW Mortgage, the "Grand Woods Prepetition Mortgages") securing a promissory note in the original principal amount of $2,250,000, dated November 30, 2007, as modified by a certain Modification of Note and Mortgage Agreement dated December 29, 2008 (the "2007 GW Note" and, together with the 2006 GW Note, the "Grand Woods Notes").

The loans evidenced by the Grand Woods Notes were purchase-money loans provided by the Grand Woods Lender in order for Grand Woods Developers, LLC to acquire the Grand Woods project, located in Flagler County, Florida. The Grand Woods Notes are in default due to missed debt-service payments. The maturity date of the 2006 GW Note is August 25, 2011 and the maturity date of the 2007 GW Note is November 30, 2012. Neither of the Grand Woods Notes is guaranteed.

As of the date of this Disclosure Statement, the Grand Woods Notes have been fully drawn and the aggregate principal amount of indebtedness owing under the Grand Woods Notes is estimated at approximately $3,487,500.