# EXHIBIT 3

<u>Common Interest Agreement</u>
<u>Between and Among Crescent Resources, LLC; Crescent Holdings, LLC; Duke Ventures,
LLC; Morgan Stanley Real Estate Fund V U.S., L.P.; Morgan Stanley Real Estate Fund V
Special U.S., L.P.; MSP Real Estate Fund V, L.P.; Morgan Stanley Real Estate Investors V
U.S., L.P.; Morgan Stanley Strategic Investments, Inc.; MSREF V U.S. CIP-II Co-
Investment Partnership-B, L.P.; MSREF V U.S. CIP-II Co-Investment Partnership-C,
L.P.; and MSREF V U.S. CIP-II Co-Investment Partnership-F, L.P.</u>

This common-interest agreement (the "<u>Agreement</u>") is made and entered into by and between the following parties (each a "<u>Party</u>," and collectively, the "<u>Parties</u>") and their respective outside Counsel, as set forth below:

(a)    Crescent Resources, LLC, a Georgia limited partnership ("<u>Crescent Resources</u>");

(b)    Crescent Holdings, LLC, a Delaware limited liability company ("<u>Crescent Holdings</u>");

(c)    Duke Ventures, LLC, a Nevada limited liability company ("<u>Duke Ventures</u>");

(d)    Morgan Stanley Real Estate Fund V U.S., L.P., a Delaware limited partnership ("<u>MSREF</u>");

(e)    Morgan Stanley Real Estate Fund V Special U.S., L.P., a Delaware limited partnership ("<u>Special Fund</u>");

(f)    MSP Real Estate Fund V, L.P., a Delaware limited partnership ("<u>MSP</u>");

(g)    Morgan Stanley Real Estate Investors V U.S., L.P., a Delaware limited partnership ("<u>MSREI</u>");

(h)    Morgan Stanley Strategic Investments, Inc., a Delaware corporation (<u>MSSI</u>");

(i)    MSREF V U.S. CIP-II Co-Investment Partnership-B, L.P., a Delaware limited partnership ("<u>CIP-II-B</u>");

(j)    MSREF V U.S. CIP-II Co-Investment Partnership-C, L.P., a Delaware limited partnership ("<u>CIP-II-C</u>");

(k)    MSREF V U.S. CIP-II Co-Investment Partnership-F, L.P., a Delaware limited partnership ("<u>CIP-II-F</u>");

(l)    Weil, Gotshal & Manges, LLP and Robinson, Bradshaw & Hinson, P.A., as outside counsel for Crescent Holdings, Crescent Resources, and their subsidiaries;

(m)    Skadden, Arps, Slate, Meagher & Flom, LLP, as outside counsel for Duke Ventures; and



EXHIBIT
3

04491.01454-0001-00013

      (n)  Cadwalader, Wickersham & Taft LLP, as outside counsel for Morgan Stanley Real Estate Fund V U.S., L.P.; Morgan Stanley Real Estate Fund V Special U.S., L.P.; MSP Real Estate Fund V, L.P.; Morgan Stanley Real Estate Investors V U.S., L.P.; Morgan Stanley Strategic Investments, Inc.; MSREF V U.S. CIP-II Co-Investment Partnership-B, L.P.; MSREF V U.S. CIP-II Co-Investment Partnership-C, L.P.; MSREF V U.S. CIP-II Co-Investment Partnership-F, L.P.

Each Party is entering into this Agreement on its own behalf, and on behalf of any of its subsidiaries, and on behalf of its Representatives involved in any Common Interest Activities described herein.

      WHEREAS, Crescent Holdings is owned, in part, by Duke Ventures, MSREF, Special Fund, MSP, MSREI, MSSI, CIP-II-B, CIP-II-C, and CIP-II-F, and Crescent Holdings owns 100% of Crescent Resources;

      WHEREAS, Crescent Resources is in the process of reviewing various strategic alternatives with regard to its current financial condition, capital structure, and credit agreements;

      WHEREAS, Crescent Holdings, Duke Ventures, MSREF, Special Fund, MSP, MSREI, MSSI, CIP-II-B, CIP-II-C, and CIP-II-F share common legal and strategic interests with each other and with Crescent Resources relating to Crescent Resources (including analyzing potential legal claims against Crescent Resources and possible defenses thereto), and, in particular, anticipate that Crescent Holdings, Crescent Resources, and one or more of their subsidiaries may become involved in litigation or contested bankruptcy proceedings in connection with such review and execution of alternatives;

      WHEREAS, the Parties desire to explore strategic alternatives for Crescent Holdings, Crescent Resources, and their subsidiaries, including, but not limited to, restructuring, reorganization, recapitalization, run-off, and bankruptcy alternatives generally and, in connection therewith, intend to cooperate to identify legal claims and strategies to defend, satisfy, or otherwise resolve these legal claims through a restructuring or other strategic alternative ("Common Interest Activities");

      WHEREAS, the Parties have undertaken, and may undertake, factual and legal research and/or joint strategic consultation, and the Parties are of the opinion that it is in their respective

04491.01454-0001-00014

best interests to exchange certain information, pool certain individual work product, and cooperate to obtain the most favorable outcomes with regard to the Common Interest Activities;

WHEREAS, in furtherance of the Parties' Common Interest Activities, it has been and will be advisable and necessary for the Parties and their counsel to communicate freely with one another;

WHEREAS, cooperation on the Common Interest Activities will necessarily involve the exchange of confidential business, financial, and other information, as well as information that is otherwise protected as attorney-client communication and/or attorney work product;

WHEREAS, in carrying on the Common Interest Activities, and entering into this Agreement, the Parties and their Counsel are relying on the common-interest exception to the waiver of the attorney-client privilege and attorney-work-product protection that might otherwise result from the disclosure of confidential or protected information;

WHEREAS, the Parties wish to continue to pursue their separate but common interests and to avoid any suggestion of waiver of the confidentiality of privileged communications, documents, or work product as well as to foster cooperation that the Parties and their respective Counsel believe is appropriate and necessary to further each Party's respective interests; and

WHEREAS, Counsel for each of the Parties to this Agreement wishes to confirm and memorialize the terms and conditions upon which they will share and exchange such privileged and/or confidential information related to their Common Interest Activities.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follow:

    1.    For purposes of this Agreement, the following definitions apply:

        1.1.    "Counsel" means and includes both outside and in-house counsel for any Party hereto, and execution of this Agreement by a Party binds the Party and all in-house counsel and all outside counsel that provide legal services to such Party in connection with the Common Interest Activities.

04491.01454-0001-00015

1.2.   "Common Interest Materials" shall have the meaning set forth in Paragraph 2 hereof.

1.3.   "Non-Privileged Confidential Information" means all data, reports, interpretations, financial statements, forecasts, and records (whether in written form, electronically stored, or otherwise) containing or otherwise reflecting trade secret or other confidential research, development, or commercial information concerning the Party disclosing the information, or on whose behalf it is delivered, and all subsidiaries or affiliates of such Party, and all notes, analyses, compilations, studies, interpretations, or other documents in tangible form (whether in written form, electronically stored, or otherwise), whether prepared by the disclosing Party or by any other Party or their Representatives or others that contain, are based upon (in whole or in part) or otherwise reflect such information;

1.4.   "Representatives" shall have the meaning set forth in Paragraph 5 hereof;

1.5.   "Covered Information" means and includes all Common Interest Materials and all Non-Privileged Confidential Information. Notwithstanding the foregoing, the following will not constitute Covered Information:

1.5.1. information of a Party that was not acquired or obtained in connection with Common Interest Activities;

1.5.2. information that is obtained by a Party or its Representatives from a source other than another Party or its Representatives, to the extent such source is not prohibited from disclosing such information by a contractual, legal, or fiduciary obligation; and

1.5.3. information that is or becomes generally available to the public other than as a result of a disclosure in violation of the provisions of this Agreement.

04491.01454-0001-00016

2.    Counsel for each of the Parties has concluded that, because of certain interests that each of the Parties have in common, it is in their respective clients' interests in connection with certain of the Common Interest Activities to share certain information related to such matters with each other, in writing, electronically, and orally, consisting of written communications; reports of experts, consultants, or investigators; meetings in person, by telephone, or forms of electronic communication, and records or reports of such communications; and documents, financial information, memoranda, or analyses, including attorney work product, concerning the subject matter of the Common Interest Activities, all of which are included within the term "Common Interest Materials" used herein.  Except as provided for herein, Common Interest Materials include all factual information, documents, opinions, strategies, mental impressions, strategies or tactics, or other material, information or confidences exchanged, communicated, or jointly developed in the past or future by whatever means between or among any of the Parties or their Counsel in connection with the Common Interest Activities.  Common Interest Materials shall not include materials that are not privileged or protected by the work-product doctrine or another applicable privilege.  Each of the Parties hereby consents to the disclosure by its Counsel of Covered Information, including Common Interest Materials, in connection with the Common Interest Activities, whether or not such disclosure would otherwise have been prohibited by rules of professional conduct applicable to such Counsel or would have breached any other duty of confidentiality owed by such Counsel to such party.

3.    Nothing in this Agreement shall be construed to affect the separate and independent representation of each Party by its respective Counsel. Without limiting the foregoing, nothing in this Agreement, and no disclosure, communication, sharing, or joint development of information or other materials in connection with the Common Interest Activities, shall or is intended to create or result in any attorney-client relationship, fiduciary relationship, or fiduciary duty between or among any Party hereto and any other Party's Counsel. Each Party acknowledges and agrees that neither this Agreement nor any exchange of information or other action taken pursuant hereto or in connection with the Common Interest Activities shall create or result in any such relationship or duty. Each Party understands and acknowledges that it is represented only by its own Counsel and not by Counsel for any other Party hereto.  The Parties and their respective Counsel remain free to formulate and implement

04491.01454-0001-00017

their own strategies in connection with any of the Common Interest Activities. Furthermore, each Party hereto and its respective Counsel agree that there is no imputation or presumption of the sharing of information beyond the individuals who actually share such confidences as authorized under this Agreement.

4.      In connection with the Common Interest Activities, the Parties will cooperate with each other to the extent they believe it is in their common interests to do so. Each Party reserves the right to determine what Covered Information it will disclose or share (and under what circumstances), and no obligation or duty to disclose or share any such Covered Information is created by this Agreement. Covered Information disclosed or shared by a Party or its Counsel have been and shall be without any representation or warranty by such Party as to the accuracy or completeness of such information in any respect. The Parties shall cooperate and exchange Common Interest Materials in such a manner as to preserve, to the extent permitted by law, their respective rights and the rights of each other under the attorney-client privilege, the work-product doctrine, and any other applicable privileges, doctrines, or protections. Nothing in this Agreement is intended or shall be construed to require any Party to violate any court order that may pertain to any Common Interest Activities. Nothing herein shall create any obligation on the Parties to cooperate with respect to any particular issue or litigation.

5.      Common Interest Materials may be privileged from disclosure to adverse or other parties as a result of the attorney-client privilege, the work-product doctrine, or other applicable privileges or confidentiality protections. It is the desire, intention, and mutual understanding of the Parties that: (a) the sharing of Common Interest Materials between or among them (including any Counsel, managers, directors, executive committee members, officers, affiliates, partners, trustees, employees, agents, representatives, consultants, accountants, financial advisors, experts, and other professional advisors of the Parties (collectively, "Representatives")) is not intended to, and shall not, waive or diminish in any way the confidentiality of such materials or their continued protection under applicable privileges, doctrines, or protections; and (b) all Common Interest Materials provided by a Party (including through any of its Representatives) pursuant to this Agreement that are entitled to protection under any recognized privileges, doctrines, or protections, shall remain entitled to such protection under the common-interest doctrine. The Parties also intend and understand that any disclosure of Common Interest

04491.01454-0001-00018

Materials to any other Parties or any Representatives pursuant to this Agreement will not constitute a waiver of any other available privilege, doctrine, or protection. The Parties acknowledge that waiver of any such privilege, doctrine, or protection requires the written consent of the originating Party; however, if the Common Interest Materials were created collaboratively by the Parties in accordance with this Agreement, waiver of any such privilege, doctrine, or protection requires the written consent of all Parties.

6.   No Party shall disclose any other Party's Covered Information except: (a) with the prior written consent of the other Party; (b) as otherwise provided in this Agreement; or (c) as required by law or court order.

7.   Any Covered Information, and the information contained therein, is to be used by each person or Party receiving it solely in connection with the Common Interest Activities, and for no other purpose. Covered Information received shall not be disclosed except to the Parties and their Representatives, and all persons to whom such disclosure is to be made shall first be advised that the terms and conditions of this Agreement control access to and disclosure of Covered Information. Each Party shall be responsible for any breach of this Agreement by any of its Representatives. Additionally, upon request, each Party shall disclose to the other Party the identity of all persons (other than Counsel, the Party's senior officers, directors, and managers, and the Parties' professional advisors specifically retained in connection with the Common Interest Activities) to whom such Party proposes to disclose the other Party's Covered Information. Except as provided above, each Party shall also provide advance notice to each other Party of its intention to disclose the other Party's Covered Information to any expert, consultant, or independent contractor. If the other Party objects to the disclosure of its Covered Information to any such proposed person or entity, it shall so notify the Party proposing to make such disclosure in writing. In such event, the objecting Party's Covered Information shall not be disclosed to such person or entity. The Party providing notice of intent to disclose Covered Information shall allow a reasonable amount of time for the other Parties who are entitled to notice to object to the disclosure, and shall specify in the written notice the date after which the Party plans to make the disclosure absent any objections.

04491.01454-0001-00019

8.    If any person or entity not a Party to this Agreement requests or demands (by way of subpoena, document request or otherwise) access to Covered Information provided or created pursuant to this Agreement the Party receiving the demand or subpoena, or that Party's Counsel, shall (to the extent permitted by law) promptly provide written notice to the Party who supplied any such materials, or to that Party's Counsel. If the Covered Information was created collaboratively by the Parties in accordance with this Agreement, the Party receiving the demand or subpoena, or that Party's Counsel, shall (to the extent permitted by law) promptly provide written notice to all Parties or their Counsel. The Parties that provided or created the Covered Information shall be permitted all opportunities to protect their privileges and interests and the confidentiality of Covered Information. Counsel receiving the demand or subpoena shall cooperate with the reasonable requests of the Parties that provided or created the Covered Information in any proceeding relating to the disclosure sought. In the event that such Covered Information is nonetheless required to be disclosed, the Party compelled to make such disclosure shall take all reasonable steps to obtain reliable assurance that confidential treatment will be accorded the information so disclosed.

9.    Each Party agrees to be bound by the terms of this Agreement and not to disclose Covered Information received from any other Party except as permitted by this Agreement, even after such Party is no longer a Party to any of the Common Interest Activities. Nothing in this Agreement shall restrict any Party from using or disclosing Covered Information solely developed or originated by that Party, or in that Party's possession under circumstances unrelated to this Agreement. Nothing in this Agreement shall restrict any Party from using or disclosing any information or materials received independently of this Agreement and not in connection with Common Interest Activities. Nothing in this Agreement shall prevent a Party from asserting a claim against any other Party with respect to any matter. In any such action, nothing herein shall expand, limit, modify, or otherwise diminish the Parties' rights and powers under applicable law to seek (or to object to) discovery of any information and materials, including, but not limited to, Covered Information, and to use (or to object to the use of) any such information or materials produced voluntarily or by a court directive in response to any such discovery requests.

04491.01454-0001-00020

10. Each Party shall have the right at any time and for any reason, within its sole discretion, to withdraw from this Agreement on 2 business days' prior written notice to the other Parties; provided, however, that the obligations imposed on each of the Parties, including protecting the confidentiality of the Covered Information already communicated or exchanged, shall remain in effect notwithstanding any Party's withdrawal from this Agreement. Upon written request by the originating Party, and except to the extent precluded by law, regulation, standards of professional responsibility, existing corporate document-retention policies, or request of any governmental agency or other regulatory authority, following withdrawal from this Agreement by any Party, the withdrawing Party shall promptly return to the originating Party or Parties all Covered Information previously obtained pursuant to this Agreement, or in lieu thereof, provide a signed written statement to the originating Party that such material and all copies have been destroyed. Notwithstanding the foregoing, there is no obligation to return or destroy electronically stored information ("ESI") that is not reasonably accessible because of undue burden or cost, including, but not limited to: ESI from the withdrawing Party's disaster-recovery computer-backup systems, voice-mail system, its employees' personal digital assistants (e.g., Blackberries and Palm Pilots), mothballed computers, email archives, old hard drives, etc. All such ESI, however, remains Covered Information subject to the protections of this Agreement.

11. Nothing contained in this Agreement shall be deemed to create an attorney-client relationship between any Party and any other person or entity. The fact that a Party has entered into this Agreement and has shared or received Common Interest Materials or Non-Privileged Confidential Information shall not be used by the other Party as a basis to seek to disqualify any Counsel or any expert retained by that Counsel from representing its client(s) in the Common Interest Activities. Except as may otherwise be provided by applicable law or ethical standards, in the event that in any action, investigation, inquiry, or proceeding, any client of any of the undersigned Counsel becomes a witness who may be called upon to provide evidence concerning the clients of the other undersigned Counsel, or in any way undertakes any act or position that may be construed to be adverse to such other clients (including, but not limited to, appearance as a witness adverse to clients of the undersigned Counsel), nothing in this Agreement shall be deemed to create a conflict of interest nor shall any Party hereto argue that such a conflict of interest exists so as to require the disqualification of any Counsel. Except as may otherwise be

04491.01454-0001-00021

provided by applicable law or ethical standards, no undersigned Counsel or law firm of any undersigned Counsel shall be disqualified from examining or cross-examining any client of any of the undersigned Counsel who testifies at any proceeding, whether under grant of immunity or otherwise, or from taking any other act in any litigation, because of such Counsel's participating in this Agreement, or because such Counsel has been privy to privileged or protected information pursuant to this Agreement. Each Counsel signatory to this Agreement has specifically advised his or her client(s) of this paragraph.

12.     This Agreement constitutes the entire agreement and understanding among the Parties hereto with respect to the subject matter hereof and memorializes any prior oral understanding among the Parties or Counsel regarding Covered Information and applies to all communications and other exchanges of information (whether written or oral) among Counsel related to the Common Interest Activities prior to the execution of this Agreement.

13.     This Agreement may be modified only by written agreement of the Parties hereto. This Agreement may also be executed in separate counterparts.

14.     This Agreement shall be governed by the laws of the State of New York, without regard to conflicts of law principles. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect.

15.     Each signatory to this Agreement hereby states and affirms that he or she has full authority to execute this Agreement on behalf of the Party for whom he or she executes the Agreement.

16.     This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors, and assigns, and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

17.     Any notice required or contemplated by this Agreement shall be in writing and shall be deemed delivered if sent by hand-delivery, overnight delivery service, facsimile, or electronic transmission to the addresses set forth on the signature page below. Each Party may change the address for notice by providing notice to the other Party as set forth above.

04491.01454-0001-00022

18.     The Parties hereby agree that any dispute under this Agreement shall be subject to the exclusive jurisdiction and venue of the state or federal courts in Mecklenburg County, NC, and each of the Parties hereby waives any and all objections to the assertion of such jurisdiction and any right to a trial or hearing by a jury. The Parties expressly acknowledge and agree that no adequate remedy is available at law for breach of this Agreement and that, in addition to any other remedies available, performance of this Agreement may be specifically ordered or a breach hereof may be enjoined, or both.

19.     Each Party to this Agreement acknowledges that this Agreement was drafted jointly by the Parties hereto, that each Party has consulted with such Party's own attorneys and fully understands the terms hereof, and that each Party has received legal advice from such Party's own attorneys regarding the advisability of entering into this Agreement and is voluntarily executing the Agreement. This Agreement is not intended to, and shall not, create rights in any person or entity not a Party hereto. Other Parties may be added to this Agreement only with the prior unanimous written consent of all Parties hereto.

20.     Except as expressly set forth herein, this Agreement shall have no effect on any other matters involving the Parties.

EXECUTED on the dates and by the Parties' Representatives indicated below.

**For Crescent Holdings, LLC and Crescent Resources, LLC**

*Weil, Gotshal & Manges, LLP*

By: _____          Date: 2/23/09
        Lydia Protopapas
        *Weil, Gotshal & Manges LLP*
        700 Louisiana, Suite 1600
        Houston, Texas 77002
        Telephone:    (713) 546-5322
        Facsimile:    (713) 224-9511
        lydia.protopapas@weil.com

Common Interest Agreement—Page 11 of 13

04491.01454-0001-00023

**For Duke Ventures, LLC**

*Skadden, Arps, Slate, Meagher & Flom LLP*

By: _____          Date: 2/20/09

Christopher J. Ulery
*Skadden, Arps, Slate, Meagher & Flom LLP*
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone:   (202) 371-7327
Facsimile:   (202) 661-9127
chris.ulery@skadden.com

04491.01454-0001-00024

For Morgan Stanley Real Estate Fund V U.S., L.P.; Morgan Stanley Real Estate Fund V Special U.S., L.P.; MSP Real Estate Fund V, L.P.; Morgan Stanley Real Estate Investors V U.S., L.P.; Morgan Stanley Strategic Investments, Inc.; MSREF V U.S. CIP-II Co-Investment Partnership-B, L.P.; MSREF V U.S. CIP-II Co-Investment Partnership-C, L.P.; MSREF V U.S. CIP-II Co-Investment Partnership-F, L.P.

*Cadwalader, Wickersham & Taft LLP*

By: _Peter Friedman /JF_          Date: _2/25/09_

Peter M. Friedman
*Cadwalader, Wickersham & Taft LLP*
1201 F Street, N.W., Suite 1100
Washington, D.C. 20004
Telephone:    (202) 862-2347
Facsimile:    (202) 862-2400
peter.friedman@cwt.com

Common Interest Agreement--Page 13 of 13

04491.01454-0001-00025