

**SIGNED this 22nd day of July, 2011.**

_Craig A. Gargotta_

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11507-CAG |
| | § | |
| CRESCENT RESOURCES, LLC | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |

**MEMORANDUM OPINION ON DUKE'S EXPEDITED MOTION TO
DISMISS TURNOVER PROCEEDINGS FOR LACK OF JURISDICTION**

Crescent Resources, LLC, Crescent Holdings, LLC, and their affiliated debtors and debtors in possession (collectively "Crescent Resources," "Crescent," or "Debtors"), filed a petition under Chapter 11 of the Bankruptcy Code on June 10, 2009. Prior to filing for bankruptcy, Crescent was a real estate development and management organization which developed, owned, leased, managed, and sold real estate since 1969. On December 20, 2010, this Court signed the Order Confirming Debtors' Revised Second Amended Joint Plan of Reorganization (docket no. 1534).

On September 3, 2010, the Crescent Resources Litigation Trust (the "Trust") filed an adversary complaint against Duke Energy Corporation, et al. (docket no. 1224). The complaint

alleges that the 2006 transaction which created Crescent Resources, LLC rendered the Debtors insolvent. The history of this transaction, as well as the history of the turnover proceedings between these parties (the "Turnover Proceedings"), is discussed at length in the Court's Memorandum Opinion issued concurrently with this Opinion (docket no. __2284__).

The Court held a hearing on February 17, 2011 to consider whether Duke Ventures, LLC ("Duke") had any right to assert a privilege as to the files held by Crescent's former counsel, Robinson Bradshaw & Hinston, P.A's ("RBH"). As the Court was working on this issue, Duke filed an Expedited Motion to Dismiss Turnover Proceedings for Lack of Jurisdiction on May 9, 2011 (docket no. 2018). On May 31, 2011, the Trust filed their Opposition to Duke Energy's Expedited Motion to Dismiss Turnover Proceedings for Lack of Jurisdiction (docket no. 2135). Duke filed a Reply to the Trust's Opposition on June 10, 2011 (docket no. 2138) and the Trust filed a Sur-Reply Brief in Further Opposition on June 14, 2011 (docket no. 2192).

On June 17 and 20, 2011, the Court heard oral arguments on the Motion to Dismiss. The Court has reviewed the briefs of the Trust and Duke, and has considered the arguments and evidence of counsel. Based on the foregoing, the Court finds that Duke's Expedited Motion to Dismiss Turnover Proceedings for Lack of Jurisdiction should be DENIED.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) on which this Court can enter a final judgment. This matter is referred to the Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following represents the Court's findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## ISSUES

After the hearing, several issues were taken under advisement: (A) does Duke have standing to bring this challenge; (B) did the Plan of Reorganization and related documents transfer ownership of any attorney-held files owned by the Debtor to the Litigation Trust; (C) does *Dynasty Oil & Gas, LLC v. Citizens Bank* (*In re United Operating, LLC*), 540 F.3d 351 (5th Cir. 2008) apply to this type of turnover action; and (D) if *United Operating* does apply, does the Plan of Reorganization "specifically and unequivocally" retain the cause of action. The Court will discuss each issue in turn.

A.      Does Duke Have Standing to Bring this Challenge

The Trust, in its Opposition to Duke Energy's Motion to Dismiss, argues that Duke has no standing to bring the Motion to Dismiss (docket no. 2135). The Trust argues that Duke is a stranger to the Turnover Proceedings because the Motion for Turnover (docket no. 1257) involves RBH, not Duke. The Trust makes several other arguments about why Duke should not be raising these issues, particularly that Duke's challenge to the turnover proceedings have been waived, and that Duke's motion is useless because this Court could require production of the documents on other grounds  (*see* docket no. 2135).

Duke argues that challenges to standing and jurisdiction are not waivable (docket no. 2183). In *United Operating*, the Fifth Circuit stated that "[s]tanding is a jurisdictional requirement, and we are obliged to ensure it is satisfied regardless whether the parties address the matter." 540 F.3d at 354 (citing *Lang v. French*, 154 F.3d 217, 222 n.28 (5th Cir. 1998)). The Trust argues that Duke is merely coming into this Court, months into the Turnover Proceeding, and attempting to "throw stones." However, the Court has an independent obligation to ensure it

has jurisdiction to hear a matter, and therefore, rejects the Trust's argument that Duke lacks standing to bring this challenge.

B.     Does the Plan of Reorganization Transfer Ownership

1.     Parties' Contentions

As an initial matter, Duke contends that the Revised Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan") (docket no. 880) does not transfer ownership of the disputed client files from the Debtor to the Trust.  If the Trust does not have any ownership interest in the files, Duke argues, then the Trust cannot pursue a turnover claim for property in which it has no ownership interest.  Duke cites to the Litigation Trust Agreement as the only document which transfers ownership of any type of documents to the Trust.  Duke quotes a portion of Section 1.2(a) of the Litigation Trust Agreement, which states that the Litigation Trust Agreement transfers "all of [Debtors'] respective rights, title and interests in and to any attorney client privilege, work product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Litigation Trust Claims . . ." (docket no. 2018 at 5, n.1).  Duke argues that this language only transferred the right to assert a privilege, not the ownership of the documents themselves. Duke then discusses Section 1.2(c) of the Litigation Trust Agreement which transfers those documents belonging to the Debtor listed on Schedule 2 to the Trust Agreement.  Section 1.2(c) of the Litigation Trust Agreement states that "the Debtors or Reorganized Debtors, as applicable, shall (i) deliver or cause to be delivered to the Litigation Trustee those documents relating to the Litigation Trust Claims (including those maintained in electronic format and original documents) held by the Debtors or the Reorganized Debtors which are listed on Schedule 2 hereto…" Schedule 2 to the Trust Agreement does not specifically contain a reference to client files held by

RBH.  Therefore, Duke argues, the Trust has absolutely no ownership interests in the disputed client files; the files are still the property of the Debtor.  Additionally, Duke argues that the language "held by the Debtors or the Reorganized Debtors" in Section 1.2(c) does not convey ownership of other documents "owned" by the debtors or reorganized debtors but "held" by others.

Duke also argues that Section 1.2(c) only conveyed the right, title, and interest in the attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Litigation Trust Claims.  Duke argues this is merely conveying the right to assert or not assert the privilege, not a conveyance of ownership of the documents.

The Trust responded by citing to Section 1.2(d) of the Litigation Trust Agreement, which states:

> At any time and from time to time on and after the Effective Date, the Reorganized Debtors agree at the reasonable request of the Litigation Trustee *in order to evidence or effectuate the transfer of the Litigation Trust Claims and the Privileges to the Litigation Trust* (and, in the case of the Privileges, the Litigation Trust Board) and the consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan: (i) to execute and/or deliver any *instruments, documents, books, and records* (including those maintained in electronic format and original documents as may be needed), (ii) to take, or cause to be taken, all such further actions as the Litigation Trustee may reasonably request, and (iii) to cooperate with the Litigation Trustee in the prosecution of the Litigation Trust Claims . . .

(emphasis added).  The Trust argues that because the Crescent documents held by RBH are Crescent's property under either North Carolina or Texas law (as argued throughout the Turnover Proceedings), this section in the Litigation Trust Agreement gives the Trust the right to obtain the RBH files.

2.    Analysis

At the hearing, Duke made the analogy that if a seller conveyed their house to a buyer, that does not mean that the purchaser would have access to the purchaser's attorney-client files. This analogy falls flat on its face. What the Litigation Trust Agreement specifically said was that it was transferring the right, title, and ownership in these privileges and any other privileges attaching to documents associated with the Litigation Trust Claims. To use a better analogy, Duke's argument is that the Litigation Trust Agreement would be like a seller conveying the right to tell a third party not to look at a document, but not conveying the actual document itself. In other words, according to Duke, the Litigation Trust Agreement conveys the right to control a document without conveying ownership of the document.

Duke cites no case law in their assertion that a transfer of the ownership of the privilege would not include ownership of the underlying documents. As Duke stated, these were sophisticated parties. Any sophisticated party reading the Litigation Trust Agreement would understand that the Trust was stepping into the shoes of the Debtor to pursue litigation, and that necessarily included the transfer of these documents. In the absence of authority for Duke's position, this Court will not make that distinction and therefore finds that the Litigation Trust Agreement does transfer ownership in the documents from the Debtor to the Trust.

C.    Does *United Operating* Apply

The Trust argues that *United Operating* is inapplicable in the present case. The Trust argues that *United Operating* deals only with the preservation of claims post-confirmation. The Trust points to the Bankruptcy Code's definition of "claim" to mean "a right to payment." 11 U.S.C. § 101(5)(A). The Trust argues that Duke is trying to expand the holding of *United Operating* beyond "claims" to encompass all of a trustee's rights, interests, and powers. The

Trust argues that it is not asserting a right to payment in the Turnover Proceedings, but is asserting rights under Section 542(a) and (e) to the records RBH holds that the Trust asserts is its property. The Trust instead argues that Section 542(a) and (e) turnover powers are a tool to be used by a debtor, not a "claim."

Duke argues that in *United Operating*, the Fifth Circuit was construing Section 1123(b)(3), which applies to a much broader range of post-confirmation issues and related proceedings than just Bankruptcy Code "claims." Section 1123(b)(3) states that a plan may:

> (3)    provide for—
>
>    (A)  the settlement or adjustment of any claim *or interest* belonging to the debtor or to the estate;
>
>    (B)  the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim *or interest*.

(emphasis added). *United Operating* was interpreting Section 1123(b)(3) in discussing whether a reorganized debtor was able to bring a post-confirmation action. *See United Operating*, 540 F.3d at 355. While the Trust quoted several passages from *United Operating* which discuss only claims and not interests, this would require making a distinction the Fifth Circuit does not appear to make. *See United Operating*, 540 F.3d at 355. After quoting Section 1123(b)(3), the Fifth Circuit stated that "[a] debtor may preserve its standing to bring such a claim (*e.g.*, for fraud or breach of fiduciary duty, or to avoid a preferential transfer) but only if the plan of reorganization expressly provides for the claim's 'retention and enforcement by the debtor.'" *Id.* (quoting 11 U.S.C. § 1123(b)(3)(B)). From this language, it appears that the Fifth Circuit meant to include both claims and interests in their holding in *United Operating*.

Additional support for this reading of *United Operating* comes from other Fifth Circuit decisions. In describing a debtor's proceedings under Sections 542(a) and (b), the Fifth Circuit

described the turnover claim as a "claim demanding the turnover of the amounts due to its estate." *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 965 (5th Cir. 1983). The Fifth Circuit also described a case as holding that the trustee "had not asserted a turnover *claim* under section 542." *In re Gandy*, 299 F.3d 489, 498 (5th Cir. 2002) (emphasis added).

The Trust additionally argues that there is a distinction between proceedings under 542(a) and (e) and 542(b). The Trust argues that 542(b) concerns claims in the sense that they would be for a "right to payment" while Sections 542(a) and (e) do not. The Trust points to no case law drawing a distinction between these sections and this Court declines to do so as well.

This Court therefore finds that *United Operating* makes no distinction between "claims" and "interests" in its holding and that the holding in this case, discussed *infra*, does apply to the present case.

D.      Does the Plan "Specifically and Unequivocally" Retain Causes of Action under § 542

Having established that Duke has standing to bring this Motion to Dismiss, that the Plan and related documents do transfer ownership of the RBH Files to the Trust, and that the holding in *United Operating* does apply, the next step is to discuss that holding and related case law and how it applies to this case.

In *United Operating*, the Fifth Circuit discussed how, during a Chapter 11 case, a debtor, operating as a debtor-in-possession, has most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate. 540 F.3d at 355 (citing 11 U.S.C. § 1107(a)). Once a plan is confirmed, the debtor loses its status as debtor-in-possession, and the debtor's authority to pursue claims as though it were a trustee also expires. *Id.* (citing 11 U.S.C. § 1101(1); *Ice Cream Liquidation, Inc. v. Calip Dairies, Inc.* (*In re Ice Cream Liquidation, Inc.*), 319 B.R. 324, 333 (Bankr. D.Conn. 2005); *In re Grinstead*, 75 B.R. 2, 3 (Bankr. D.Minn. 1985)). However,

8

Section 1123(b)(3) allows a reorganized debtor to bring a post-confirmation action if the debtor preserves its standing to bring such a claim, but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." *Id.* (quoting 11 U.S.C. § 1123(b)(3)(B)). Once the plan is confirmed, "the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *Id.* (quoting ***Paramount Plastics v. Polymerland (In re Paramount Plastics, Inc.)***, 172 B.R. 331, 333 (Bankr. W.D.Wash. 1994)).

The Fifth Circuit has held that for a debtor to preserve a claim, the plan must expressly retain the right to pursue that action, and such reservation must be "specific and unequivocal." *Id.* (internal citations omitted). If the plan does not make an effective reservation of the claim, "the debtor has no standing to pursue such a claim that the estate owned before it was dissolved." *Id.*

In short, ***United Operating*** holds that in order for a debtor to have standing to bring an action post-confirmation, the plan of reorganization must contain "specific and unequivocal" language retaining that cause of action. The question now for this Court to decide is whether Crescent's Plan of Reorganization specifically and unequivocally retained a cause of action under Section 542.

1.     The Relevant Plan Language

As an initial matter, both the Trust and Duke agree that there is no mention of "Section 542," "turnover," or the files held by RBH in the Plan of Reorganization, the Disclosure Statement, or the Litigation Trust Agreement (the "Plan Documents"). The most specific reference to turnover is found in the Plan of Reorganization at section 8.5, describing the Litigation Trust Assets to be transferred to the Litigation Trust. The sentence in full states:

The Litigation Trust Assets shall include, but are not limited to, those Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551 against any Person or Entity other than the Litigation Trust Excluded Parties.

"Litigation Trust Assets" is defined in the Plan to mean "the Litigation Trust Claims, the Litigation Trust Funds, and any other assets acquired by the Litigation Trust after the Effective Date or pursuant to the Plan" (docket no. 880, Section 1.78). "Causes of Action" is defined in the Plan to mean "any and all Claims, Avoidance Actions, and rights of the Debtors, including claims of a Debtor against another Debtor or other affiliate" (*Id.*, Section 1.21).

The Trust points to other sections in the Plan Documents to argue that turnover actions were specifically and unequivocally retained. The Court will first make a determination of whether the language in the Plan is sufficient to meet the test imposed by the Fifth Circuit before determining if the other Plan language must be examined.

2.      Parties' Contentions

Duke discusses ***Ice Cream***, which is cited favorably by ***United Operating***. 319 B.R. 324, *cited by* ***United Operating***, 540 F.3d at 356. Duke presented this case for the proposition that turnover actions are barred post-confirmation unless the plan preserves them. The court in ***Ice Cream***, discussing whether the debtor had standing to bring a 542(b) claim, stated:

The Plan makes no mention of Bankruptcy Code § 542, turnover actions, actions to recover accounts receivable or the invalidation of setoffs, although Plan § 5.2 specifically mentions Sections 544, 547, 548 and 550.

319 B.R. at 333. Duke argues that in the present case, "the Plan's specific reference to other provisions of Chapter 5, excluding the turnover statute, is telling, and makes this case squarely on point with the specific holding of ***Ice Cream*** endorsed by the Fifth Circuit" (docket no. 2018, p.11).

Duke argues that *Ice Cream* "rejected the proposition that a reference to a post-confirmation right to pursue 'Chapter 5 litigation' is sufficient to specifically and unequivocally retain the right to bring a turnover proceeding" (docket no. 2183, p. 18 (citing *Ice Cream Liquidation*, 319 B.R. at 333 & n.14)). Duke then points to *United Operating*, arguing that the Fifth Circuit specifically endorsed the holding in *Ice Cream* when the Fifth Circuit cited *Ice Cream* for the proposition that there was "no standing to pursue turnover actions because the plan 'made no mention' of them." *United Operating*, 540 F.3d at 356 (quoting *Ice Cream*, 319 B.R. at 333).

The Trust argues that the Plan language in Section 8.5 discussed above is a sufficient grant of authority to specifically and unequivocally retain a cause of action under Section 542.

The Trust additionally argues that there are other sections of the Plan which grant the Trust authority to pursue turnover claims, and Duke responded to those arguments both during oral arguments and in the briefing. As will be discussed below, the Court was able to reach a conclusion on whether the Trust retained standing based on the arguments presented above, as well as a review of case law in the Fifth Circuit since *United Operating* was decided, so these other arguments by Duke and the Trust have not been considered here.

3.      Review of Case Law

Since *United Operating* was decided, there have been several cases attempting to interpret what the Fifth Circuit meant by "specific and unequivocal." Although there has been no binding case to define definitively what the court meant by that phrase, other courts have attempted to determine if a reorganized debtor retained standing on a case-by-case basis. In order to make a determination if the Plan language in this case is sufficiently "specific and unequivocal," this Court finds it useful to go through the cases interpreting this phrase.

In ***McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)***, the Fifth Circuit was tasked with determining if a post-confirmation debtor retained the right to pursue an avoidance action. 52 F.3d 1330 (5th Cir. 1995). The plan language the court looked at stated that "[t]he reorganized debtor shall retain that property described on Exhibit F. Among the property of the estate hereby distributed to the trust are those claims and causes of action listed or described on Exhibit B (including causes of action created or sanctioned by §§ 542-553)." ***Id.*** at 1336. The Fifth Circuit agreed with the bankruptcy and district courts, and found the parenthetical language to be ambiguous when read in conjunction with other sections of the plan and employed parol evidence to determine the intent of the parties. ***Id.*** The court looked at the general policy behind the assertion of avoidance actions—"the proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors"—and determined that the debtor had standing to pursue an avoidance action. ***Id.*** (citing to 5 COLLIER ON BANKRUPTCY 1123.02, at 1123-23 (Lawrence P. King ed., 15th ed. 1994)).

This Court has already discussed ***United Operating***, but it is useful to look at the specific plan language the Fifth Circuit found was sufficient, as well as the language the court found was not specific and unequivocal. The court was making the determination whether the reorganized debtor retained standing to pursue certain common law claims. ***United Operating***, 540 F.3d at 354. The court's only mention of specific language from the debtor's plan of reorganization is in the court's holding that the plan did not retain the cause of action for the common law claims:

> Neither the Plan's blanket reservation of "any and all claims" arising under the Code, nor its specific reservation under various Code provisions are sufficient to preserve the common-law claims Dynasty now brings for, *inter alia*, fraud, breach of fiduciary duty, and negligence.

*Id.* at 356.  The Fifth Circuit merely held in this case that a blanket reservation of claims *under the Code* and specific reservations of *Code provisions* was not a specific and unequivocal reservation of a *common-law* claim.  *Id.*

This makes sense, particularly given the reasoning the Fifth Circuit used in concluding that in order to retain causes of action, the reservation must be specific and unequivocal.  *Id.* at 355.   The court looked to one of the purposes of bankruptcy, namely that bankruptcy is "designed primarily to 'secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.'"  *Id.* (quoting *In re Kroh Bros. Dev. Co.*, 100 B.R. 487, 495 (Bankr. W.D.Mo. 1989)).  In order to facilitate a "timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation."  *Id.* (citing *Harstad v. First American Bank*, 39 F.3d 898, 903 (8th Cir. 1994)).  Only with proper notice can a creditor determine whether a proposed plan effectively resolves matters satisfactorily before they vote to approve the plan.  *Id.*  The whole point of requiring "specific and unequivocal" retention language is so that a creditor, after voting on a plan, is not suddenly blind-sided by litigation or surprised if the reorganized debtor attempts to pursue a claim which would only benefit the reorganized debtor, not creditors.  *See id.* at 355-56.

In sum, *United Operating* stands for the rule that a blanket reservation is insufficient to retain a cause of action, and that the purpose of requiring "specific and unequivocal" retention language is so that creditors are on notice of what causes of action the reorganized debtor is planning on pursuing before the creditor votes on the plan.

The Fifth Circuit case dealing with this issue is *Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 Fed.App'x 822 (5th Cir. 2009) (unpub.).  This case did little to refine what the

court meant by "specific and unequivocal," ultimately determining that the debtor did not have standing to pursue a claim based on the plan language. The case does, however, reiterate general concepts about plan interpretation, stating that the court will "interpret the Plan using traditional tools of contractual interpretations." *Id.* at 828 (quoting *Advisory Comm. Of Major Funding Corp. v. Sommers (In re Advisory Comm. Of Major Funding Corp.)*, 109 F.3d 219, 222 (5th Cir. 1997)) (internal modifications omitted). The Fifth Circuit also cited to *Brown v. Fin. Serv. Corp., Int'l* for the contractual interpretation rule that "conflicting provisions should be reconciled in order to give meaning to all parts of the contract." *Id.* (quoting *Brown v. Fin. Serv. Corp., Int'l*, 489 F.2d 144, 151 (5th Cir. 1974)).

Duke additionally brought to the attention of this Court a recent Fifth Circuit case, *In re Davis Offshore, L.P.*, No. 09-41294 (5th Cir., June 16, 2011), for the proposition that "the specific provision controls over the general exculpatory provision." No. 09-41294 at 9-10.

Before turning to bankruptcy court opinions in the Fifth Circuit interpreting *United Operating*, the Court believes it will be helpful to look at the cases cited by *United Operating*. The first such case the Court will examine is *In re Paramount Plastics, Inc.*, 172 B.R. 331. The Fifth Circuit relied on this case for the proposition that there was no standing to pursue preference actions where preference actions were not preserved in the plan. *United Operating*, 540 F.3d at 356 (citing *Paramount*, 172 B.R. at 335). The court in *Paramount* stated that

> the plan contains no reference to preference actions, either in the description of creditor treatment, the means for implementing the plan, the liquidating analysis, or the retention of jurisdiction. The most specific language in the jurisdictional paragraph relates to "allowance or disallowance of claims and interests," which the Court concludes does not encompass avoidance actions.

*Paramount*, 172 B.R. at 335. The Fifth Circuit in *United Operating* relied on a case which held that a generic blanket reservation ("allowance or disallowance of claims and interests") was insufficient to preserve a claim post confirmation.

The next case requiring an in-depth discussion is *In re Ice Cream Liquidation*, 319 B.R. 324. As previously discussed, the Fifth Circuit cited *Ice Cream* for the proposition that there was "no standing to pursue turnover actions because the plan 'made no mention' of them." *United Operating*, 540 F.3d at 356 (quoting *Ice Cream*, 319 B.R. at 333). This case is useful in setting guideposts for interpreting "specific and unequivocal" because this case held that the reorganized debtor did retain standing to prosecute some claims, while also holding that the debtor did not retain standing to prosecute others. *Ice Cream*, 319 B.R. 324.

The court quoted relevant parts of section 5.2 of the plan:

The Plan confers certain "powers and duties" on the post confirmation Debtor, including:

(a) to liquidate all of its property to cash; . . .

(c) to prosecute any claims under Sections 544, 547, 548 and 550 [collectively, Avoidance Actions"] of the [Bankruptcy] Code; [and] . . .

(f) other powers and duties described in th[e] Plan or conferred upon it by operation of law.

*Id.* at 327-28. The court also quoted section 8.1 of the plan, which authorized the debtor to "'compromise or settle' any 'Chapter 5 litigation.'" *Id.* at 328. The court additionally looked to a portion of the debtor's disclosure statement which said "The Debtor shall prosecute all preference and other actions to recover funds for the estate under Chapter 5 of the Bankruptcy Code…" *Id.* The court then held that "[t]he Plan makes no mention of Bankruptcy Code § 542, turnover actions, actions to recover accounts receivable or the invalidation of set-offs, although Plan § 5.2 specifically mentions Sections 544, 547, 548 and 550" and found that the debtor lacked standing to bring the Section 542(b) claims. *Id.* at 333-34.

In a footnote, the court discussed the debtor's argument that the reference in section 8.1 of the debtor's power to settle or compromise "Chapter 5 litigation" was an "other power[] or

dut[y] described in th[e] Plan" within the purview of section 5.2(f) of the plan. *Id.* at 333, n.14. The court determined that section 8.1 was ambiguous as to whether section 8.1 referred to actions such as 542(b), because the phrase "Chapter 5 litigation" was not defined in the plan and "could be interpreted merely as a reference to the materially incomplete list of chapter 5 causes of action (*i.e.,* the Avoidance Actions) contained in Plan § 5.2." *Id.* at 333-34, n.14. The court then determined that the disclosure statement language quoted above did not resolve the plan ambiguity because "the Avoidance Actions do include 'preference actions' *and* other chapter 5 actions (*e.g.,* fraudulent transfer actions under Section 548) even if the Avoidance Actions do not include Section 542(b) actions." *Id.* at 334, n.14.

The *Ice Cream* court did find that the debtor retained standing to pursue its preference claims. *Id.* at 337. The plan language the court considered specifically authorized the debtor to prosecute claims under Sections 547 and 550. *Id.* The court rejected the argument that a reference in the plan to specific code sections was not sufficiently specific, stating that this "gave notice of the Debtor's intention to commence postconfirmation preference actions" and further holding that "[t]he court adopts as the better-reasoned view those cases which hold that a Section 1123(b)(3) reservation need not be as specific as the Defendants argue in order to be enforceable." *Id.* (citing *The Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504-05 (Bankr. M.D.Tenn. 2004) ("It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment … Nothing in [Bankruptcy Code] § 1123(b)(3) suggests such specificity is required.")). In a footnote, the court cautions against a more stringent rule—that debtors must list all known causes of action—stating that "the issue of what the debtor and/or its professionals knew and when it/they knew it potentially could be

raised defensively in every postconfirmation preference action when the defendant was not specifically named in the plan." *Id.* at 337, n.21.

At its core, ***Ice Cream*** stands for the proposition that listing causes of action by code section is "specific and unequivocal," but that granting the reorganized debtor authority "to prosecute any claims under Sections 544, 547, 548 and 550 of the [Bankruptcy] Code; [and] . . . other powers and duties described in th[e] Plan or conferred upon it by operation of law" in conjunction with the authority to "compromise or settle" any "Chapter 5 litigation" is not "specific and unequivocal." *See Id.*  As will be discussed more below, this language is different than the language at issue in the present case.  The language at issue before the Court grants the Trust the authority to pursue "Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551" (docket no. 880, Section 8.5).

The Court now moves to discussing other bankruptcy court cases construing the holding of ***United Operating***.  The first case is ***Moglia v. Keith (In re Manchester, Inc.)***, 2009 WL 2243592 (Bankr. N.D.Tex., July 16, 2009).  In ***Manchester***, the plan of reorganization established a litigation trust similar to the Trust established in the present case.  *Id.*  The plan of reorganization transferred to the litigation trust "Causes of Action," which was a defined term in the plan and included "any and all claims, rights, defenses, third-party claims, [etc.]" and "Avoidance Actions," another defined term.  *Id.* at *4.  "Avoidance Actions" in turn were defined to mean "any and all Causes of Action which a trustee, the Debtors, the Estates or other appropriate party in interest may assert under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code."  *Id.* at *5.  The litigation trust in the case was pursuing both avoidance actions under Sections 547, 548, 550, 502(d), and

510(c) of the Code and non-avoidance state and common law claims, including breach of fiduciary duty, payment of illegal dividends, and negligent misrepresentation. *Id.* at *1. The defendants in the case argued that the litigation trust lacked standing because the plan did not contain "specific and unequivocal retention language." *Id.* at *2**.**

The court in ***Manchester*** determined that, based on ***United Operating*** and the Fifth Circuit's reliance on ***Ice Cream***, the plan language was sufficient to retain the avoidance causes of action, stating "creditors must be told in the plan of reorganization that avoidance actions will be pursued post-confirmation by the representative of the estate, the individual prospective defendants do not have to be identified in the plan." *Id.* at *5. The court then determined that the plan language did not specifically and unequivocally retain the non-avoidance state and common law claims, holding that:

> While the Plan's definition of Causes of Action is certainly broad enough to include them as claims the Debtors intended to preserve and transfer to the Litigation Trust, the Plan does not expressly identify these claims; nor does the Plan specifically and unequivocally transfer them to the Litigation Trust for pursuit by the Litigation Trustee post-confirmation.

*Id.* So this case stands for the proposition that listing causes of action by code section is sufficient to retain those causes of action, but transferring "any and all actions, claims, [etc.]" is insufficient to retain a common or state law cause of action if that specific cause of action (i.e. breach of fiduciary duty) is not specifically mentioned.[1]

The next case is ***Spicer v. Laguna Madre Oil & Gas, LLC (In re Texas Wyoming Drilling, Inc.)***, 422 B.R. 612 (Bankr. N.D.Tex. 2010). That case involved two different debtors—TWD and Ranzino-Renda—and two different plans. *Id.* At the outset of determining

---

[1] It is also worth mentioning that, in making the determination that the debtor lacked the standing to pursue these common and state law claims, the court entered a lengthy footnote examining the holding in ***United Operating***, stating that the plan language gave creditors sufficient notice to be able to vote on the plan and the court's belief that ***United Operating*** ultimately led to a result which "unnecessarily prejudices the Debtors' creditors and provides a needless windfall to the Defendants." *Id.*, n.6.

whether the debtors' plans contained specific and unequivocal retention language, the court stated that:

> It does not seem to the court consistent with the objectives of the appellate courts to apply the applicable precedents in so draconian a fashion as to disserve the interests of creditors and frustrate pursuit of claims which may have merit. The court thus approaches the issues presented to it assuming that it was not the intention of the courts deciding the cases cited by the TWD Defendants and the Cook Defendants that their opinions would be too readily usably by defendants to defeat the legitimate expectations of a debtor's creditors for recovery.

*Id.* at 624. The court went on to discuss *United Operating* in more detail, concluding that *United Operating* "stands for the proposition that creditors must be able to view a proposed plan and properly evaluate the creditors' benefits and potential liabilities so that they may then consider that information when they vote to approve or disapprove a plan." *Id.* at 625.

The court determined that "nowhere does *United Operating* state that the specific and unequivocal language must include identification of specific claims against specific defendants" before concluding that the Fifth Circuit's favorable citation to *Ice Cream* shows that a categorical reservation is sufficient to preserve standing for such claims. *Id.* at 626-27. The court ultimately concluded that:

> The purpose of the specific and unequivocal language requirement is not to put potential defendants (at least those not voting on the plan) on notice of lawsuits that may be brought against them; rather it is to put creditors that are entitled to vote on notice that there may be assets in the form of potential lawsuits so that they may pass on the plan with sufficient knowledge of the assets that are available to pay the claims held by the creditors against the debtor.

*Id.* at 627 (citing *United Operating*, 540 F.3d at 355). The court then established a test based on *United Operating*, determining that the question of whether a reorganized debtor preserved standing "turns on whether the language in the [p]lan was sufficient to put creditors on notice that [the debtor] anticipated pursuing the [c]laims after confirmation." *Id.* at 627-28.

The relevant plan language from the TWD plan defined "Estate Actions" as:

> any and all claims, causes of action and enforceable rights of the Debtor against third parties, or assertable by the Debtor on behalf of creditors, its estate, or itself . . . for recover or avoidance of obligations, transfers of property or interests in property . . . and other types or kinds of property or interests in property … recoverable or avoidable pursuant to Chapter 5 or other sections of the Bankruptcy Code or any applicable law.

*Id.* at 620.  Using the test discussed above, the court determined that TWD had standing because the plan provided a categorical reservation of avoidance claims and was sufficient to put creditors on notice that avoidance claims would be pursued.  *Id.* at 628.

The relevant plan language from the Ranzino-Renda plan transferred "all real and personal property of the estate . . . including but not limited to all causes of action . . . and any avoidance actions . . . "  *Id.* at 620-21.  The claims Ranzino-Renda wished to pursue were for common and state law claims (*i.e.*, breach of contract, breach of duty of care, and legal malpractice).  *Id.* at 620.  The court determined that the plan language was a "clear example of a blanket reservation that was deemed in *United Operating* to be insufficient to preserve for the reorganized debtor claims that belonged to the bankruptcy estate."  *Id.* at 629.  The court, applying contract rules of interpretation that a contract should be construed to effect the intent of the parties, looked beyond the plan to the disclosure statement.  *Id.* (citing *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 307 (5th Cir. 2002); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Newby v. Enron Corp. (In re Enron Corp. Secs.)*, 391 F.Supp.2d 541, 567-68 (S.D.Tex. 2005)).  The court looked to the disclosure statement and determined that creditors would have read the disclosure statement and expected the reorganized debtor to pursue those claims.  *Id.* at 630.  Additionally, the court stated that if the court, upon an examination of the plan and disclosure statement, determined that the debtor was required to pursue a claim in order to perform on the plan, the court could order the debtor to pursue that claim.  *Id.* (citing 11. U.S.C. § 1142(a)).  If the court

found that the debtor was under a duty to pursue such a claim, "the revesting and reservation provision on which that performance rests would be sufficient to support standing, despite any relevant want of specificity of description in the plan itself." *Id.*

In sum, *Texas Wyoming Drilling* establishes a test, based on the importance of providing notice to creditors, to determine if plan language meets the "specific and unequivocal" requirement. If the plan language does not, the court can look outside the plan to the disclosure statement to determine the expectation of creditors.[2]

In *Blue Water Endeavors, LLC v. AC & Sons, Inc.* (*In re Blue Water Endeavors, LLC*), 2011 WL 52525 (Bankr. E.D.Tex. Jan. 6, 2011), the court found that the reorganized debtor lacked standing to pursue certain common law claims. The court discussed that there must be an identifiable intent to bring such an action in order to reserve or retain that cause of action. *Id.* at *6 (discussing *United Operating*, 540 F.3d 351). The court determined the language the debtor cited to contained only generic language (i.e. "lawsuits or other claims against third-parties") and found the reorganized debtor lacked standing. *Id.*

The one outlier of all the 5th Circuit bankruptcy cases is *In re MPF Holding U.S. LLC*, 443 B.R. 736 (Bankr. S.D.Tex. 2011). In that case, the court, after discussing *Manchester* and

---

[2] This case was recently upheld on appeal to the Fifth Circuit. *Spicer v. Laguna Madre Oil & Gas, LLC* (*In re Texas Wyoming Drilling, Inc.*), No. 10-10717 (5th Cir. July 21, 2011). The Fifth Circuit upheld the Bankruptcy Court's finding that the TWD plan contained specific and unequivocal retention language, holding that "where the plan and disclosure statement reserved the right to pursue the Avoidance Actions against pre-petition shareholders of TWD, the reorganized debtor specifically and unequivocally retained these claims under *In re United Operating*." *Id.* at 8. The Fifth Circuit reached this conclusion while holding that the court "need not decide whether a debtor whose plan fails to identify *any* prospective defendants has standing to pursue post-conformation [sic] claims against subsequently-named defendants." *Id.* Additionally, the Fifth Circuit held that a court may look at the disclosure statement to determine whether a post-confirmation debtor has standing. *Id.* at 6. The court found this to be consistent with the purpose of *United Operating*, "to put 'creditors on notice of any claim [the debtor] wishes to pursue after confirmation' and enable 'creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it.'" *Id.* at 5 (quoting *United Operating*, 540 F.3d at 355). The court also "observed that *In re United Operating* focused exclusively on the retention of *claims*" as opposed to specific causes of actions against specific defendants. *Id.* at 7-9 (emphasis in original). Therefore, while the Fifth Circuit did not specifically define "specific and unequivocal," this Court interprets the Fifth Circuit's ruling to be in line with the findings presented herein.

*Texas Wyoming*, concluded that "the Fifth Circuit requires that the parties to be sued after confirmation must be individually identified in the plan, and that failure to do so necessarily means that the bright-line test [from *United Operating*] is not satisfied." *Id.* at 744.  In other words, the plan must go further than reciting code provisions; it must state that a specific cause of action will be brought against a specific defendant.  *See id.* at 746.  This Court declines to adopt the holding of the case and believes that the other cases in the Fifth Circuit are more in line with the holding of *United Operating*.[3]

   4.   Analysis

   Having done an exhaustive discussion of the relevant case law on this issue, it appears that, while the Fifth Circuit has not defined what "specific and unequivocal" means, cases have interpreted different plan language on case-by-case bases which this Court can use as guideposts to judge the plan language at issue here.  Courts have held that listing causes of action by code section is sufficiently "specific and unequivocal."  *See Texas Wyoming Drilling*, 422 B.R. 612; *Manchester*, 2009 WL 2243592; *Ice Cream*, 319 B.R. 324.  The courts have also held that a generic blanket reservation is insufficient.  *Blue Water*, 2011 WL 52525, *6 ("lawsuits or other claims"); *Manchester*, 2009 WL 2243592, *4 ("any and all actions, claims, rights, [etc.]"); *Ice Cream*, 319 B.R. 324, 328 (granting the authority to "compromise or settle" any "Chapter 5 litigation").

   The cases in the Fifth Circuit all cited *United Operating*.  *United Operating*, in making its holding, also discussed that one of the purposes of bankruptcy is to "secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time."  40 F.3d at 355 (quoting *In re Kroh Bros. Dev. Co.*, 100 B.R. at 495).  In order to facilitate this resolution

---

[3] Additionally, this Court finds that following the holding in *MPF* would be overly burdensome in a case such as the present case.  This case involves 122 debtors, billions of dollars in debt, and over 5,000 creditors.  To require the specificity outlined in *MPF* would lead to an unwieldy plan of reorganization and unduly delay the process.

of the estate, "a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation." *Id.* (citing *Harstad*, 39 F.3d at 903). It is for this reason—notice to creditors—that the Fifth Circuit determined that the retention language needed to be "specific and unequivocal." *Id.*

This Court agrees with the reasoning behind the test established in *Texas Wyoming Drilling* to determine if the plan language meets the "specific and unequivocal" requirement. 422 B.R. at 627-28. That test, again, was to make a determination "whether the language in the [p]lan was sufficient to put creditors on notice that [the debtor] anticipated pursuing the [c]laims after confirmation." *Id*. at 627-28. If so, the language meets the "specific and unequivocal" requirement.

The language at issue is from Section 8.5 of the Plan:

> The Litigation Trust Assets shall include, but are not limited to, those Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under §§ 544, 547, 548, 549, 550, and 551 against any Person or Entity other than the Litigation Trust Excluded Parties.

It appears this language falls somewhere between "any and all claims" and listing turnover claims by statute number. The one case dealing with "Chapter 5 litigation" held that phrase alone to be insufficient. *See Ice Cream*, 319 B.R. at 328. However, in that case, the reference to Chapter 5 was in isolation. *Id.* Here, Chapter 5 is referenced as well as six specific code sections. So the question before the Court becomes whether a reference to Chapter 5 of the Bankruptcy Code, in conjunction with Sections 544, 547, 548, 549, 550, and 551 is "specific and unequivocal" to retain a turnover cause of action under Section 542. Based on the above discussion, this Court finds that a cause of action for turnover was specifically and unequivocally retained by this language in the Plan.

Using the test from **Texas Wyoming**, it seems far-fetched to believe that a creditor would not be on notice that the Trust anticipated pursuing turnover claims after confirmation. While it may not have been contemplated by the Trust or the Debtor before confirmation that RBH would not turn over the files, looking at the language of the Plan, a creditor could not feign surprise that the Trust would pursue a claim under Section 542. This is additionally bolstered by looking at the table of contents of the Bankruptcy Code. Chapter 5 is titled "Creditors, the Debtor, and the Estate" and is further broken up into three different subchapters. *See generally* 11 U.S.C. 101, et seq. Subchapter III is entitled "The Estate" and includes Sections 541-562. As discussed, the Plan specifically includes six code sections, Sections 544, 547, 548, 549, 550, and 551. These are all from Subchapter III of Chapter 5. While Duke argues that these were sophisticated parties that could have included more in the Plan, the Court finds this language sufficient. It is as if someone had a list containing "the letters of the first half of the alphabet including A, B, C, E, F and G", one would expect that "D" were included in the list. While the Plan language is more generic than language considered in other cases, this Court finds that it was sufficient to put creditors voting on the Plan on notice that 542 turnover claims may be pursued. Because the Court finds standing based on this language alone, the Court will not consider the other arguments presented by the Trust on this issue.

### CONCLUSION

Having addressed the facts of the case, and considered the arguments made by the parties, this Court finds that (1) the Debtor's Plan of Reorganization and related documents effectively transferred ownership of any attorney-held files owned by the Debtor to the Litigation Trust and (2) the Plan preserved turnover claims with language which was specific and unequivocal.

Therefore the Trust has standing to pursue the Turnover Claims and this court has subject matter jurisdiction.

IT IS THEREFORE ORDERED that Duke's Expedited Motion to Dismiss Turnover Proceedings for Lack of Jurisdiction, filed on May 9, 2011 (docket no. 2018) is DENIED.

# # #