

**SIGNED this 02nd day of October, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-11507-CAG |
| | § | |
| CRESCENT RESOURCES, LLC, ET AL., | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING RIM CLUB TRUST'S MOTION FOR SUMMARY JUDGMENT**

On this date, came on for consideration the Motion for Summary Judgment Regarding Objection to Claims filed June 27, 2012 by Joseph Beckwith as Trustee of The Rim Club Trust (ECF No. 2499). After considering the written pleadings and arguments of the parties along with the record as a whole, for the following reasons, the Court finds that the Motion should be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 10, 2009, Crescent Resources LLC and its affiliated debtors, including Rim Golf Investors LLC (the "Debtor" or "RGI"), filed petitions for voluntary relief under the Bankruptcy

Code. On February 16, 2011, the Rim Golf Club and Rim Golf Members Association filed a First Amended Plan of Reorganization (the "Rim Plan") and a First Amended Disclosure Statement (ECF Nos. 1729, 1730). On May 10, 2011, the Court confirmed the Rim Plan pursuant to the Findings of Fact, Conclusions of Law, and Order Confirming First Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code (ECF No. 2019). The Rim Plan is a liquidating plan where all assets of Rim Golf Club's estate are vested in The Rim Club Trust on the Effective Date. Pursuant to the Rim Plan, the Rim Club Trustee, Joseph Beckwith, was appointed on the Effective Date and has the right to file, bring, or settle objections to claims.

On April 3, 1997, the Rim Golf Club LLC loaned $16,295,000 to Chaparral Pines LLC (predecessor in interest to the Debtor, RGI) to fund development of a residential golf community in Payson, Arizona.[1] This loan is evidenced by a promissory note dated April 3, 1997 (the "Note") (ECF No. 2356, Ex. H). Repayment of the Note was secured by a lien on certain real and personal property located in Gila County, Arizona. This lien is evidenced by the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing made as of April 3, 1997 by and between Chaparral Pines LLC, as Trustor, and Rim Golf Club LLC, as Beneficiary (the "Deed of Trust") (ECF No. 2356, Ex. I). The parties to the Deed of Trust were Chaparral Pines LLC (described as the Trustor) First American Title Insurance Company (described as the Trustee), and Rim Golf Club LLC (described as the Beneficiary) (*id.*). The Deed of Trust was recorded with the Gila County Recorder as Doc. No. 1997-704541 on April 4, 1997. RGI's only real property asset is the property described in the Deed of Trust.

On or about July 30, 2005, a Deed of Release and Full Reconveyance was executed and duly recorded as Doc. No. 2005-013766 with the Gila County Recorder on August 2, 2005 (the

---

[1] The Rim Golf Club LLC changed its name to Rim Country Lender LLC, an Arizona limited liability company on or about August 28, 1997. Chaparral Pines LLC, an Arizona limited liability company, is the manager of Rim Country Lender LLC.

2

"Deed of Release") (ECF No. 2356, Ex. J). The Deed of Release states as follows:

> WHEREAS, the indebtedness secured by the Deed of Trust executed by Chaparral Pines, L.L.C., an Arizona limited liability company, as Trustor, to The Rim Golf Club, L.L.C., as Arizona limited liability company, as Beneficiary, dated April 3, 1997, and recorded April 4, 1997, as 1997-704541, Records of Gila County, Arizona has been paid in full.
>
> NOW THEREFORE, the Beneficiary does hereby release said Deed of Trust pursuant to the provisions of Arizona Revised Statutes Section 33-707.

(ECF No. 2356, Ex. J.) The Deed of Release was signed by Jess R. Gift. The signature portion of the Deed of Trust states as follows:

> This instrument was acknowledged and executed before me this 30th day of July, 2005 by Jess R. Gift who acknowledge to be the manager of Chaparral Pines, LLC, and that as such officer, being authorized to do so, signed the name of the corporation as such officer.

(*Id.*)

After RGI filed bankruptcy, certain Rim Country Lender Claimants filed the following proofs of claim against the estate: World West LLC (POC No. 834), Rim Country Lenders (POC No. 1160), Jeffrey D. Kirpatrick (POC No. 1161), Jim Register (POC No. 1233), Scott Urdang (POC No. 1380), and William and Donna Bergman (POC No. 1752). Certain of the proofs of claim purport to be secured by the Deed of Trust.[2]

On September 12, 2011, the Rim Club Trust filed its Objection to the Rim Country Lender Claims as secured claims, arguing that RGI's predecessor in interest released the Deed of Trust prepetition pursuant to the Deed of Release, thereby rendering the claims unsecured (ECF No. 2356). On October 11, 2011, the Rim Country Lender Claimants filed their joint Response to the Objection to Claims (ECF No. 2386). The Claimants note that Gift signed the Deed of

---

2 The Debtor also listed additional Rim Country Lender claims on its Schedule D as undisputed, liquidated, non-contingent secured claims in undetermined amounts.

Release in his capacity as manager of Chaparral Pines LLC, and argue that Chaparral Pines LLC had no authority to release the Deed of Trust because it was described in the Deed of Trust as the Trustor, not the Beneficiary. Thus, the Claimants argued that the Deed of Release is invalid on its face.

On June 27, 2012, Rim Club Trust filed a Motion for Summary Judgment as to its Objection to Claims along with a supporting Statement of Facts (ECF Nos. 2499, 2500). On August 28, 2012, Rim Country Lender filed its Response in opposition to the Motion (ECF No. 2514). On September 10, 2012, Rim Club Trust filed its Reply (ECF No. 2519). On September 12, 2012, the Court held a hearing, and both parties presented their arguments to the Court.

## PARTIES CONTENTIONS

In its Motion for Summary Judgment, and in its underlying Objection to Claims, the Rim Club Trust objects to the asserted secured status of Rim Country Lender LLC's claim. According to the Rim Club Trust, Rim Country Lender ("RCL") alleges a secured claim based upon its assertion that it has a valid lien, but any such lien has been formally released pursuant to the Deed of Release executed by the Rim Golf Club LLC, now known as RCL, through its manager, Chaparral Pines LLC.

In its Motion, the Rim Club Trust asserts that RCL's only defense is that Chaparral Pines LLC did not have authority to release the Deed of Trust on behalf of Rim Golf Club (and thus on behalf of RCL) because Chaparral Pines LLC is described as the Trustor in the Deed of Release, rather than the Beneficiary. The Rim Club Trust argues, however, that Chaparral Pines LLC is the undisputed manager of Rim Golf Club/ RCL pursuant to the records of the Arizona Corporations Commission (ECF No. 2500, Ex. C), and under Arizona law, a manager of an Arizona limited liability company is the agent of the company for the purpose of carrying on

4

business in the usual course (ECF No. 2499 (citing A.R.S. § 29-654(B)(2)). Specifically, a manager with authority who executes an instrument in the name of the limited liability company binds the company (*id.* (citing A.R.S. § 29-654(B)(3)).

In its Response, RCL argues that the Rim Club Trust failed to meet its initial burden of proof on a summary judgment motion because the Motion was not supported by any pleadings, depositions, answers to interrogatories, admissions on file, or affidavits. RCL argues that the Rim Club Trust's Statement of Facts and "unsworn copies of documents" do not suffice. RCL asserts that the Court may take judicial notice of these documents but that the Rim Club Trust must still offer "proof as to other documents, such as the Deed of Release in the case." (ECF No. 2514, at 3). In sum, RCL argues that the Rim Club Trust "failed to establish that (1) the Deed of Release was filed in the appropriate Arizona real property records; (ii) that the party submitting the Deed of Release had authority to do so; or (iii) that the individual signing the Deed of Release had authority to do so." (*Id.* at 3-4.)

RCL further argues that even if the Rim Club Trust had met its burden of proof, there are genuine issues of material fact that preclude summary judgment. For example, RCL argues that according to the Arizona Corporations Commission, the manager of Chaparral Pines LLC has been Scott B. Lyon since June 12, 2000 (*id.*). With its Response, RCL provides a printout from the Arizona Corporation Commission's Public Access System, last updated June 14, 2000, indicating that Scott B. Lyon was the manager of Chaparral Pines beginning June 12, 2000 (ECF No. 2514, at 8). RCL also provided a sworn statement from Claimant Jim Register (Ex. A, Declaration of Jim Register). In the Declaration, Register states as follows:

> 2. I submitted a proof of claim against Rim Country Investors, LLC based on my status as a secured creditor. My claim has not been satisfied and remains due and owing.

5

> 3. I am aware of a document entitled 'Deed of Release' signed by one Jess R. Gift. Attached hereto as Exhibit A is a true and correct copy of a printout from the Arizona Corporation Commission. According to the Arizona Corporation Commission, the manager of Chaparral Pines, LLC since 2000 has been Scott B. Lyon. To my knowledge, Jess R. Gift is a rogue employee of Crescent Resources, LLC who filed the Deed of Release without authority. The Statement in the Deed of Release that the debt has been satisfied is false.

(*Id*. at 7.) In its Response, RCL also notes that the Schedule of Financial Affairs does not list Jess Gift as an officer or director (*id.* at 4 (citing Ex. B)). In addition, RCL points to a Complaint filed by the Trustee against Jess Gift under 11 U.S.C. §§ 547 and 548, in which Gift is identified as "Residential RD Profit Center Head IV." (*Id.* (citing Ex. D)).

Like in its Response to the Objection to Claim, RCL again argues that the Deed of Release lists no capacity for Gift other than the manager of Chaparral Pines LLC, and Chaparral Pines LLC was the Trustor, not the Beneficiary. RCL further argues that under Arizona law, the release must be given by a "mortgage[e], trustee, or person entitled to payment." (*Id.* (citing A.R.S. § 33-707(A)). Thus, because the Deed of Release was given by the Trustor, it is ineffective on its face.

Finally, RCL argues that the Trustee is judicially stopped from denying that RCL's claim is secured because in the Debtor's Schedule D it listed RCL as holding non-contingent, undisputed, secured claims. As a result, RCL argues, the Trustee "is barred from disputing their status under the doctrine of judicial estoppel." (*Id.* at 5.) In support of this contention, RCL generally cites to **Love v. Tyson Foods, Inc.**, 677 F. 3d 258 (5th Cir. 2012).

In its Reply, the Rim Club Trust argues that, even if the Deed of Release were invalid, the Rim Club Trust took title to the property as a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3), without notice of any competing property interest allegedly held by the RCL Claimants. In addition, the Trustee argues that RCL's judicial estoppel argument lacks merit,

6

asserting that the case law cited by RCL is inapposite.  Furthermore, the Trustee points out that while the schedules are prima facie evidence of the validity and amount of a claim, they are not dispositive evidence of either.  Moreover, under the Plan the Trustee is empowered and entitled to evaluate and challenge the amount and validity of each claim.  The Rim Club Trust also clarified its position that not only RCL but the related individual claimants mentioned above do not have secured claims because only RCL was a party to the Note (ECF No. 2519).

Attached as exhibits to its Reply, the Trustee provided additional supporting documents, including the Declarations of Kami M. Hoskins (Ex. 1), Garrett Goldman, Michael Mlaker, and Mark Lyons (Ex. 2).  The declarations of Goldman, Mlaker, and Lyons testify to the role of Jess Gift as the manager of Chaparral Pines and its related entities.  The relevant portions of the declarations are summarized below.

### Declaration of Garret Goldman

According to his statement, Garret Goldman is a civil engineer for Tetra Tech, Inc., who according to his statement was primarily responsible for all engineering work done regarding the development of the Chaparral Pines Club and Rim Golf Club in Payson, Arizona, during 2005 (ECF No. 2519-2, at 2-5).  Goldman testified, "For a period of time up to and including July 30, 2005, and for a long period of time thereafter, Jess Gift was the highest ranking agent of the developers in Arizona with respect to the operation and management of both properties and all of the above-named developer entities [including but not limited to Chaparral Pines LLC, Rim Club Investors LLC, Rim Country Lenders LLC, Rim Golf Club LLC, and Rim Golf Club, Inc.].  (*Id*. at 2).  Goldman further testified:

7

> During the entire time that Jess Gift and I were both involved with the properties, he signed documents and took other actions regarding the operation and management of both properties, and consistently did so in the name of, and on behalf of, all of the various entities mentioned above. I am not familiar with any occasion in which Jess Gift did not sign any document, make any decision, or take any action because he lacked the authority to do so. . . .
>
> All of the contacts that Tetra Tech and I had with the developers was either with Jess Gift or with people who reported to him. . . . I am not familiar with any person who had higher, or even equal, authority than Jess Gift with respect to the operation and management of the properties during the time that we were both involved with the properties, and that pertains to every one of the entities mentioned above. . . .
>
> During the entire time that Jess Gift and I worked together at the properties, he was clearly 'the man in charge' with respect to any and all doings at either or both properties. He consistently referred to himself – and others consistently referred to him – as the Manager or Project Manager or all operations and management of both properties. . . .
>
> Although I have no knowledge of what the State of Arizona records show regarding the managers of any of the developer entities, it was obvious that Jess Gift -- and no one else within 2,000 miles of the properties – appeared to all concerned to be cloaked with the authority to sign any documents relative to the operation and management of the properties.

(*Id.*) With regard to the aforementioned Scott Lyon, whom RCL asserts has been listed as the manager of Chaparral Pines LLS since June 12, 2000, Goldman testified as follows:

> Prior to 2001, and before the above-named developers acquired the Arizona properties, the properties were owned and operated by a predecessor company. The senior, top-ranking agent for that predecessor company was Scott Lyon. However, after that predecessor developer conveyed all of its rights in the properties to the developers named above, Scott Lyon no longer exercised any authority or made any decisions with respect to the properties, and, as far as I know, for the past 11 years he has had no further connection whatsoever with the operation and management of the properties.

(*Id.*)

**Declaration of Michael Mlaker**

According to his statement, Michael Mlaker was hired in 2002 to become the Vice President of Operations at both the Chaparral Pines Club and the Rim Golf Club, and served in those positions continuously until October 31, 2008 (ECF No. 2519-2, at 7). At all times during his employment in this position he reported directly to Jess Gift. Mlaker saw Gift virtually every day, and their offices were only a few feet away from one another. (*Id.* at 8-9). Mlaker corroborated much of Goldman's testimony. In addition, similar to Goldman, Mlaker stated as follows:

> During the entire time that Jess Gift and I were both involved with the properties, he signed documents and too other actions regarding the operation and management of both properties, and consistently did so in the name of, and on behalf of, all of the various entities mentioned above. These documents included, among others, deeds, declarations of easement, corporate filings, license applications, financial documents and construction contracts. To my knowledge, no other agent or representative of the developers signed such documents or took such action during the years that Mr. Gift and I were there. . . .
>
> During the entire time that I worked with Jess Gift, and reported to him, he was consistently referred to as – and commonly known as – the manager and president of all of the above-mentioned developer entities, and that specifically included the entity Chaparral Pines LLC.

(*Id.*)

**Declaration of Mark Lyons**

According to his statement, Mark Lyons has been the General Manager of the Chaparral Pines Club in Payson, Arizona since May 2004 (ECF No. 2519-2, at 13). Prior to that, he was the Food and Beverage Director for both the Chaparral Pines Club and the Rim Golf Club. He described the two clubs as being across the street from one another and noted that they share many assets and functions. (*Id.* at 13-14). Lyons stated that he saw Gift regularly, and provided testimony very similar to Goldman's and Mlaker's.

9

At the hearing on September 12, 2012, the Rim Club Trust noted that the individual RCL Claimants are essentially investors in RCL with certain contractual rights with no automatic entitlement to secured status. The Rim Club Trust reiterated that the document is valid on its face because it was signed by Gift, who is the manager of Chaparral Pines LLC, which is the undisputed manager of RCL.

With regard to whether the Rim Club Trust provided adequate documentary support to meet its initial summary judgment burden, RCL essentially conceded that the Trustee does not need to provide sworn affidavits or other documents in support of its Motion for Summary Judgment in order to meet its burden; rather, the Court may rely on the public records provided by the Trustee, such as the Note, the Deed of Trust, and the Deed of Release, as long as they are authenticated. The Rim Club Trust argued that the documents were self-authenticating public records under Federal Rule of Evidence 902. Moreover, in order to demonstrate the authenticity of the documents, in its Reply the Rim Club Trust provided a sworn statement from the attorney who obtained copies of the public records from each of the respective Arizona agencies (ECF No. 2519, Ex. 1, Declaration of Kami M. Hoskins).[3] In any event, RCL ultimately admitted that it did not actually dispute the authenticity of the documents.

RCL also acknowledged that the Rim Club Trust subsequently provided several other sworn statements its Reply in support of the Motion for Summary Judgment (ECF No. 2519, Ex. 2, Declarations of Garrett Goldman, Michael Mlaker, and Mark Lyons). RCL maintains, however, that none of these sworn statements establish that Gift is the manager of Chaparral Pines LLC.

---

[3] Pursuant to the Declaration, Hoskin obtained a copy of the Entity Detail report for Rim Country Lender LLC from the Arizona Corporation Commission's official website. The Entity Detail report is attached to the Statement of Facts (ECF No. 2500). Hoskin obtained a copy of the Deed of Release from the Gila County, Arizona Recorder's official website. The Deed of Release is attached as Exhibit D to the Statement of Facts (*Id.*).

### STANDARD ON A MOTION FOR SUMMARY JUDGMENT

The Court will grant a motion for summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (made applicable to adversary proceedings in bankruptcy by FED. R. BANKR. P. 7056); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322–23 (1986). All facts are reviewed and all inferences drawn in a light most favorable to the non-moving party. *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court, the opposing party has the burden of demonstrating, through submissions of evidentiary quality, that a trial-worthy issue exists that would warrant this Court's denial of the Motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"As to materiality … only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. "The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *Id.* (citing *Masushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

ANALYSIS

**(1) Did the Trustee meet its burden of proof as the moving party with supporting documents in support of its Motion for Summary Judgment?**

In its Response, RCL argues that the Rim Club Trust failed to meet its initial burden of proof on a summary judgment motion because the Motion was not supported by any pleadings, depositions, answers to interrogatories, admissions on file, or affidavits, and that the Statement of Facts and "unsworn copies of documents" do not suffice (ECF No. 2514, at 3). Upon review of the record, however, it is apparent that the Rim Club Trust has provided multiple documents in support of its Motion. Along with its Motion for Summary Judgment, the Rim Club Trust provided a supporting Statement of Facts. Attached as exhibits to the Statement of Facts, the Rim Club Trust provided the following: the Note (Ex. A), Loan Modification Agreement and accompanying Deed of Trust (Ex. B), a printout from the Arizona Corporation Commission's Public Access System, indicating that Chaparral Pines LLC is the manager of Rim Country Lender LLC (Ex. C), the Deed of Release (Ex. D), and the disputed proof of claim (Ex. E). In its Motion, the Rim Club Trust incorporated by reference "all matters of record," which includes the Rim Club Trust's underlying Objection to Claim and supporting exhibits. In addition, the Rim Club Trust subsequently provided additional supporting exhibits with its Reply brief. Those exhibits included several sworn declarations, described above, as well as several copies of official public records, the authenticity of which RCL does not question, according to its representation to the Court at the hearing. Therefore, the Court finds RCL's argument in this regard unpersuasive.

**(2) Is there a genuine issue of material fact as to whether Gift had the requisite authority to release the Deed of Trust?**

It is undisputed that Chaparall Pines LLC is the manager of Rim Golf Club LLC / RCL, pursuant to the records of the Arizona Corporations Commission. RCL, however, disputes that Jess Gift is the manager of Chaparral Pines LLC. The Rim Club Trust provided multiple sworn declarations from individuals who worked with Gift during the relevant time period. Those individuals stated that Gift signed all kinds of documents on behalf of Chaparral Pines and the related "development entities" including Rim Golf Club LLC / RCL, and that they were not aware of any time when Gift was not authorized to sign a document on behalf of these entities. They also stated that Gift was commonly known as and referred to as the manager and the person in charge. Similarly, they stated that no other individual within 2,000 miles of the development site in Payson, Arizona had as much authority than Gift to act on behalf of the development entities. Moreover, the Deed of Release itself is signed by Jess Gift as the manager of Chaparral Pines (ECF No. 2356-10).

Accordingly, the burden shifts to RCL to demonstrate, through submissions of evidentiary quality, that a trial-worthy question of material fact exists on this issue. *See Anderson*, 477 U.S. at 248. In considering RCL's Response and supporting documents, the "mere scintilla of evidence" in support of RCL's position that Gift is not the manager of Chaparral Pines will not suffice to defeat the Motion; there must be evidence on which the jury could reasonably find for RCL. *Id.* at 242.

In opposition to the finding that Gift is the manager of Chaparral Pines, RCL provided a Declaration by Jim Register, which includes Register's personal opinion that Gift is a "rogue employee of Crescent Resources, LLC who filed the Deed of Release without authority," but lacks any factual basis for that opinion based on his personal knowledge. RCL also provides a

printout from the Arizona Corporation Commission's Public Access System, indicating that Scott B. Lyon was the manager of Chaparral Pines beginning June 12, 2000 (ECF No. 2415, at 8). The report, however, has not been updated since June 14, 2000. The Deed of Release was signed by Gift on July 30, 2005. RCL also points to a Complaint filed by the Trustee against Jess Gift under 11 U.S.C. §§ 547 and 548, in which Gift is identified as "Residential RD Profit Center Head IV." (ECF No. 2514 (citing Ex. D)). As the Court noted at the hearing, allegations made in an adversary complaint do not constitute evidence, or even submissions of evidentiary quality.

Upon review of the totality of the evidence submitted by RCL on this point, the Court finds that RCL has simply not met its burden. Its purported evidence, including, among other things, Register's unsubstantiated personal opinion that Gift lacked authority to sign the Deed of Release and the outdated report from the Arizona Corporations Commission showing that a different individual was the manager back in 2000, is insufficient to create a genuine issue of material fact as to whether Gift was the manager during the relevant time period.

Given that there is no genuine issue of material fact as to whether Gift was the manager of Chaparral Pines, the Court will proceed to address the legal issue of whether, as manager of Chaparral Pines, Gift had the authority to release Rim Golf Club / RCL from the Deed of Trust. The Rim Club Trust argues that under Arizona law a manager of an Arizona limited liability company is the agent of the company for the purpose of carrying on business in the usual course (ECF No. 2499 (citing A.R.S. § 29-654(B)(2)). Specifically, a manager with authority who executes an instrument in the name of the limited liability company binds the company (*id.* (citing A.R.S. § 29-654(B)(3)).

Under the Arizona Revised Statutes, a "manager is an agent of the limited liability company for the purpose of carrying on its business in the usual way." A.R.S. § 29-654(B)(2). Furthermore, any act by a manager, "including the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business of the limited liability company of which he is a manager binds the limited liability company unless the acting manager has in fact no authority to act for the limited liability company in the particular matter and the person with whom he is dealing has knowledge of the fact that the manager has no such authority." A.R.S. § 29-654 (B)(3). In other words, a manager with authority who executes an instrument in the name of the limited liability company in the usual course binds the company. The sworn declarations provided by the Rim Club Trust stated that Gift consistently signed documents on behalf of the developer entities, such as deeds, declarations of easement, and financial documents to name a few (ECF No. 25-19-2). RCL at no point argued that Gift's execution of the Deed of Release did not constitute the execution of an instrument in the name of the limited liability company "in the usual way" as defined in the statute.

As stated above, under the Arizona statute, the signed document is binding "unless the acting manager has in fact no authority to act for the limited liability company in the particular matter and the person with whom he is dealing has knowledge of the fact that the manager has no such authority." A.R.S. § 29-654 (B)(3). Curiously, because Gift is an agent of both Chaparral Pines and Rim Golf Club LLC, "the person with whom he is dealing" would be himself. RCL offers no evidence suggesting that either Gift or any one else involved in the transaction, or any other third party for that matter, had knowledge that Gift did not have authority to execute the Deed of Release.

As a matter of law, the Court finds that Gift had the requisite authority to release the

15

Deed of Trust under Arizona law as an agent of both Chaparral Pines LLC and RCL. Thus, the Court will now address the remaining arguments presented by RCL in opposition to the Motion for Summary Judgment.

**(3) Is the Deed of Release invalid on its face due to the fact that Chaparral Pines is described in the Deed of Trust as the Trustor and not the Beneficiary?**

RCL points out that the Deed of describes Gift as the manager of Chaparral Pines LLC, describes Chaparral Pines LLC as the Trustor, and describes The Rim Golf Club LLC as the Beneficiary (ECF No. 2356-10). The original Deed of Trust describes First American Title Insurance Company as the Trustee (ECF No. 2356-9). RCL argues that under Arizona law, the release must be given by a "mortgage[e], trustee, or person entitled to payment." (*Id.* (citing A.R.S. § 33-707(A)).[4] Thus, according to RLC, because the Deed of Release was given by the Trustor (Chaparral Pines) rather than the Beneficiary or person entitled to payment (Rim Golf Club), the document is ineffective.

The Court disagrees. As previously discussed, under Arizona law a manager of an Arizona limited liability company has the authority to act as an agent of the company for the purpose of carrying on business in the usual course, and a manager with authority who executes an instrument in the name of the limited liability company binds the company. A.R.S. § 29-654(B)(2)-(3)). As previously stated, it is undisputed that Chaparral Pines LLC is the manager

---

[4] A.R.S. § 33-707(A) states in pertinent part:

> If a mortgagee, trustee or person entitled to payment receives full satisfaction of a mortgage or deed of trust, he shall acknowledge satisfaction of the mortgage or deed of trust by delivering to the person making satisfaction or by recording a sufficient release or satisfaction of mortgage or deed of release and reconveyance of the deed of trust, which release, satisfaction of mortgage or deed of release and reconveyance shall contain the docket and page number or recording number of the mortgage or deed of trust. . . . It shall not be necessary for the trustee to join in the acknowledgment or satisfaction, or in the release, satisfaction of mortgage or deed of release and reconveyance. The recorded release or satisfaction of mortgage or deed of release and reconveyance constitutes conclusive evidence of full or partial satisfaction and release of the mortgage or deed of trust in favor of purchasers and encumbrancers for value and without actual notice.

of Rim Golf Club LLC (now known as Rim Country Lenders LLC), pursuant to the Arizona Corporations Commission records. Therefore, as the manager for Rim Golf Club, by signing the Deed of Trust in the name of Rim Golf Club, Chaparral Pines had the authority to bind the company. Thus, Rim Golf Club effectively released the Deed of Trust through its manager, Chaparral Pines, in the Deed of Release.

Furthermore, on the Deed of Release, Gift signed directly under the name of "The Rim Golf Club, L.L.C." Therefore, it was technically signed by the Beneficiary. The Court also notes that the Deed of Release states that the recorded document was to be mailed to Rim Golf Club LLC. There is no evidence or insinuation on the record that any party disputed the authority of Gift or Chaparral Pines to bind Rim Golf Club at the time that the document was recorded, or mailed, or received thereafter. For these reasons, the Court finds that the Deed of Release is a valid and binding document both under section 29-654(B)(2)-(3) and section 33-707(A).

**(4) Even if the Release were invalid on its face, did the Rim Club Trust acquire the property as a bona fide purchaser under 11 U.S.C. § 544(a)(3)?**

In its Reply brief, the Rim Club Trust argues that, even if the release is invalid, the Rim Club Trust took title to the property as a bona fide purchaser pursuant to 11 U.S.C. § 544(a)(3), without notice of any competing property interest allegedly held by the RCL Claimants (ECF

No. 2519).[5] RCL did not file another written response after the Rim Club Trust filed its Reply, but briefly addressed this argument at the hearing. Counsel for RCL argued that in signing the Deed of Release Gift, as a manager of Chaparral Pines, was acting on behalf of the borrower (Chaparral Pines) rather than the lender (Rim Golf Club). Counsel argued that this in and of itself created a duty of inquiry notice, which would preclude a finding that the Rim Club Trust was a bona fide purchaser. The Court again notes, however, that even though the paragraph below the signature line identifies Gift as a manager of Chaparral Pines, Gift signed the document directly under the name of Rim Golf Club LLC. RCL does not present any substantive legal argument for why the mere mention in the document that Gift is the manager of Chaparral Pines would create a duty of inquiry notice, and the Court is not persuaded that it does.

### (5) Is the Rim Club Trust judicially estopped from denying that RCL's claim is secured?

RCL argues that the Rim Club Trust is judicially stopped from denying that RCL's claim is secured because in the Debtor's Schedule D it listed RCL as holding non-contingent, undisputed, secured claims. As a result, RCL argues, the Trustee "is barred from disputing their status under the doctrine of judicial estoppel." (*Id.* at 5.) RCL cites generally to *Love v. Tyson Foods, Inc.*, 677 F. 3d 258 (5th Cir 2012), but provides no explanation for why that case is applicable. The Court, therefore, conducted its own review of the case. Love filed a civil rights action against his former employer, alleging retaliation after Love complained of racial

---

[5] 11 U.S.C. § 544(a)(3) states, in pertinent part, as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— .
> . . .
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

...

discrimination in the workplace. At the time Love filed this lawsuit, he was a debtor in a Chapter 13 case, having filed a petition less than 30 days earlier. Love failed to disclose his civil rights claim as an asset of the estate on his bankruptcy schedules. The former employer moved for summary judgment, arguing that Love should be judicially estopped from pursuing the civil rights action because he failed to disclose those claims to the bankruptcy court. The district court granted the motion for summary judgment on judicial estoppel grounds, finding that Love's failure to disclose was not inadvertent. The Fifth Circuit affirmed.

The Court fails to see how *Love* is applicable to the case at hand. Love involved the debtor's intentional failure to disclose a contingent or unliquidated claim as an asset of the estate. The court subsequently denied the debtor any right to benefit from pursuing that claim. In this case, the debtor listed a claim as secured, and the Trustee now argues that it is unsecured based on a documented release of the lien. RCL has supplied the Court with no basis to draw an analogy between Love and this case and has provided no other case law in support of its judicial estoppel argument. Accordingly, the Court sees no reason to deny the Motion for Summary Judgment on judicial estoppel grounds.

## CONCLUSION

The Court has determined that the Rim Club Trust presented a properly supported Motion for Summary Judgment on their Claims Objection. The Rim Club Trust demonstrated through submissions of evidentiary quality that the claims in question were not secured due to the valid release of the Deed of Trust. It follows that in order for RCL to defeat the Motion it must demonstrate that a rational trier of fact could find that RCL's claims were, in fact, secured based upon the record evidence before the Court. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

For the reasons stated above, the Court finds that RCL has not provided sufficient evidence to defeat the Motion. There is no genuine issue of material fact as to whether Gift was a manager of Chaparral Pines, and there is no genuine issue of material fact as to whether the Deed of Trust was validly released. The Claims Objection can be resolved as a matter of law. The Court finds as a matter of law, based on the record in this case, that the claims are not secured and, accordingly, that Rim Club Trust's Motion for Summary Judgment on the Objection to Claims should be GRANTED.

IT IS SO ORDERED.

# # #